Richard E. MADORE, et al.,
Plaintiffs-Appellees,

v.

INGRAM TANK SHIPS, INC.,
Defendant-Appellant,

v.

SAMSON OCEAN SYSTEMS, INC.,
Defendant-Appellee.

No. 83–2310.

United States Court of Appeals,
Fifth Circuit.

May 21, 1984.

Decatur J. Holcombe, E.D. Vickery, Houston, Tex., William E. Wright, Roger D. Allen, New Orleans, La., for defendant-appellant.

Marvin B. Peterson, Houston, Tex., for Madore, et al.

McGlinchey, Stafford & Mintz, John E. Galloway, New Orleans, La., for Samson.

Before CLARK, Chief Judges, RUBIN and POLITZ, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court's computation of the damages due a disabled seaman is attacked on the basis that the court erred in the method it used to discount the award to present value, in failing to make allowance for income and social security taxes that would not be paid if the seaman did not work, and in allowing damages for loss of society to a minor son. We find that the issue concerning the award to the minor son was timely raised and, reaching the merits, that federal law permits no such

award. We also find merit to the other attacks on computation of damages and remand for their redetermination.

Richard E. Madore, a Jones Act seaman, was totally disabled as a result of his employer's fault. At the time of trial, he was thirty-four years old. There was evidence that he then had a life expectancy of 39.1 years, and a work-life expectancy of 30.8 years. Without further explanation, the district court computed his damages as follows:

| | |
|---|---|
| "for after tax loss of earnings" from the date of injury to March 1, 1983 (a month before trial) | 71,359 |
| "for after tax loss of future earnings reduced to its present cash value based upon an annual discount rate of 6.56%" | 1,458,898 |
| "for past pain, suffering, discomfort, inconvenience and disfigurement up until March 1, 1983." | 150,000 |
| "for future pain, suffering, discomfort, inconvenience and disfigurement." | 350,000 |

In addition, the court awarded $50,000 to Madore's wife for loss of consortium and society and $25,000 to Madore's minor son "for the loss of society of his father."

The defendant has satisfied the judgment in full save for the items contested in this appeal.

### I.

In *Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) (en banc) (*Culver I*), we decided the manner in which anticipated future inflation in the earnings of a disabled plaintiff should be considered in making an award of damages for loss of future earnings and the permissible methods by which such an award should be discounted to present value. While we later adopted different standards for the future, in *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (en banc) (*Culver II*), we held

that *Culver I* would be applicable to cases tried after the date of that opinion, September 22, 1982, and before the date we announced *Culver II*, December 22, 1983. *Culver I*, therefore, sets the principles applicable to this case, tried on April 4 and 5, 1983.

After this trial had been completed, the Supreme Court decided *Jones & Laughlin Steel Corp. v. Pfeifer*, — U.S. —, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). That decision was rendered on June 15, 1983. The parties agree that *Pfeifer* should not be applied because the parties did not reserve those issues on which *Pfeifer* may be said to have changed prior law concerning the computation of damages for loss of future earnings: the effect of likely price inflation on the worker's lost future earnings and the methods of discount that may properly be used to reduce an award to present value.[1] Accordingly, we apply only *Culver I* to the inflation-and-discount-to-present-value issues.

### II.

In computing the damages to be awarded for loss of future earnings, the district court said only what has already been quoted. Using a discount rate of 6.56%, it is possible, however, to determine how the dollar sum was calculated by reviewing the record. The district court appears to have relied on the testimony of an expert witness called by Madore, James Mandel, a certified public accountant. Mandel estimated that the stream of future earnings lost by Madore, computed after the payment of income tax, amounted to $1,611,-257. The district court appears to have deducted earnings lost from the date of Madore's injury to March 1, 1983, because this amount, $71,359, was allowed separately. Mandel also assumed that Madore's

---

1. *Pfeifer* involved a claim by a longshoreman for negligence under § 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905 (1976). This case arises under the Jones Act, 46 U.S.C. § 688 (1976). Because the parties concede that *Pfeifer* is inapplicable because it was decided after judgment was rendered, we do not comment either on whether the same principles are applicable to computations under those two statutes or on retroactivity of *Pfeifer*. *Cf. Solem v. Stumes*, — U.S. —, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) (discussing criteria for retroactive application of constitutional decisions in criminal cases).

actual future earnings would have increased $81,000 after he had received post-injury rehabilitation training. Deduction of this would result in the gross figure used by the district court, $1,458,898.

■ The discount rate applied, 6.56%, was based on a twenty-one year average of rates paid on United States Treasury bills, not on market rates available at the time of judgment as required by *Culver I.*[2] The district court computed the likelihood and amount of Madore's future income growth by taking history as a guide.[3] It is superficially consistent to determine interest rates in the same fashion. However, the loss of wages is not based on the wage-earner's average earnings but on his earnings at the time of injury, the moment at which he suffers damage. If judgment is rendered for the wage-earner, the damage award is paid at a single moment, after judgment is rendered. It can then be invested, at that moment. The market rate then available, not the average rate that would have been paid had the money been invested in the past, determines what the award will yield. The only current or market discount rate supported by the record was 10.25%, the rate testified to by Mandel. This was the rate, adjusted for tax effects, that should have been used.

### III.

Both Mandel and the defendant's expert, Dr. Kenneth Boudreaux, testified that Madore had a worklife expectancy of 25.8 years, basing their opinions on the worklife expectancy rates compiled by the United States Department of Labor. No evidence was adduced to show that Madore's personal characteristics were likely to give him a longer worklife. Yet the district court based the award on a worklife expectancy of 30.8 years, presumably because Madore would reach age 65 at that time.

■ This was erroneous. Even if retirement age for Madore could be anticipated to be age 65, it is far from certain that, even in the absence of this injury, he would have continued to work until that time. He might have, as some workers do, decided to retire early. He might have become disabled before then as a result of illness or some other misadventure. He might have died before then. The phrase "work-life expectancy" literally reflects its meaning: the average number of years that a person of a certain age will both live *and* work. Such an average is not conclusive. It may be shown by evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live *and* work a longer, or shorter, period than the average. Absent such evidence, however, computations should be based on the statistical average. *See Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir.1983); *see also Espana v. United States*, 616 F.2d 41, 44 (2d Cir.1980) (life expectancy).

### IV.

■ In computing the loss of future earnings, gross earnings should not be

---

**2.** *See* 688 F.2d at 303–04. While several methods of computing the discount rate are permitted by *Pfeifer, supra,* none contemplates using an average of rates earned in the past. "If the trier of fact relies on a specific forecast of the future rate of price inflation, and if the estimated lost stream of future earnings is calculated to include price inflation along with individual factors and other societal factors, then the proper discount rate would be the after-tax market interest rate." —— U.S. at ——, 103 S.Ct. at 2556, 76 L.Ed.2d at 790. The Court had previously discussed the after-tax market interest rate. —— U.S. at —— n. 23, 103 S.Ct. at 2551 n. 23, 76 L.Ed.2d at 784 n. 23; —— U.S. at —— n. 26, 103 S.Ct. at 2553, n. 26, 76 L.Ed.2d at 786 n. 26. Its discussion makes clear that the term "market interest rate" is the rate available in the market at the time the suit is tried.

**3.** The district court calculated Madore's future lost earnings by applying a seven percent growth rate to his present earnings. According to government statistics introduced into evidence by Madore, this was the rate of income growth experienced by transportation workers from 1964 to 1979. Other government statistics he introduced show that the inflation rate for this period was, on average, 5.88%. Therefore, all but 1.12% of the average past wage growth in this sector of the economy may have been attributable to inflation.

used. Unless the amounts the worker would have been required to pay in income taxes and social security taxes is negligible [4] or should, for some articulated reason, be disregarded, the lost income stream must be computed after deducting the income taxes and social security taxes the worker would have paid had he continued to work, for he is entitled only to be made whole for what he has lost, his net income. *Culver I,* 688 F.2d at 302.

The defendants counter that no objection was made in the district court to the failure to deduct taxes. The objection was sufficiently made by cross-examining Mandel concerning his failure to make such an allowance. In addition, the defendant's expert witness referred, on cross-examination, to the fact that he had included social security taxes in his own calculations.

### V.

■ The spouse of an injured crew member who survives his injury may recover her loss of society in an action for unseaworthiness because such an action is based on general maritime law. *Beltia v. Sidney Torres Marine Transport, Inc.,* 701 F.2d 491, 492 (5th Cir.1983); *Cruz v. Hendy*

*International,* 638 F.2d 719 (5th Cir.1981). However, the legislative remedy granted an injured seaman under the Jones Act does not include the right to claim such damages. 638 F.2d at 723.

■ Neither the Jones Act in terms nor any case cited to us permits recovery by a child for loss of the society of a living parent. An overwhelming majority of the courts that have considered such a claim under state tort law have rejected it, for various reasons.[5] *See* Annot., 11 A.L.R. 4th 549 (1982). Some have relied on the argument that it is inherently speculative to attempt to determine how much society the child has lost if his parent lives and can continue to furnish parental guidance.[6] Other factors mitigate against such an allowance: (1) the absence of any enforceable claim on the child's part to the parent's services; (2) the possible overlap of the parent's recovery; and (3) the possibility of settlements made with parents being upset.[7]

■ Madore contends that Ingram waived its right to object to this claim by failing to move to dismiss it before or during trial on the merits. A defense that the complaint fails to state a claim for which

4. *See Norfolk & Western Ry. Co. v. Liepelt,* 444 U.S. 490, 495 n. 7, 100 S.Ct. 755, 758 n. 7, 62 L.Ed.2d 689 (1980) (evidence concerning taxes may be excluded if impact would be *de minimis*).

5. *Early v. United States,* 474 F.2d 756 (9th Cir. 1973); *Pleasant v. Washington Sand and Gravel Co.,* 262 F.2d 471 (D.C.Cir.1958); *Meredith v. Scruggs,* 244 F.2d 604 (9th Cir.1957) (Hawaii law); *Hoesing v. Sears, Roebuck & Co.,* 484 F.Supp. 478 (D.Neb.1980) (Nebraska law); *Turner v. Atlantic Coast Line R.R. Co.,* 159 F.Supp. 590 (N.D.Ga.1958) (South Carolina law); *Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 269 P.2d 723 (1954), *overruled on other grounds in City of Glendale v. Bradshaw,* 108 Ariz. 582, 503 P.2d 803, 805 (1972); *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977); *Hinde v. Butler,* 35 Conn. Supp. 292, 408 A.2d 668 (Conn.Super.Ct.1979); *Clark v. Suncoast Hospital, Inc.,* 338 So.2d 1117 (Fla.Dist.Ct.App.1976); *Fayden v. Guerrero,* 420 So.2d 656 (Fla.Dist.Ct.App.1982); *Mueller v. Hellrung Constr. Co.,* 107 Ill.App.3d 337, 63 Ill. Dec. 140, 437 N.E.2d 789 (Ill.App.Ct.1982); *Schmeck v. City of Shawnee,* 231 Kan. 588, 647

P.2d 1263 (Kan.1982); *Kelly v. United States Fidelity & Guaranty Co.,* 353 So.2d 349 (La.App. 1977), *appeal dismissed,* 357 So.2d 1144 (La. 1978); *Salin v. Kloempken,* 322 N.W.2d 736 (Minn.1982); *Bradford v. Union Electric Co.,* 598 S.W.2d 149 (Mo.Ct.App.1979); *General Electric Co. v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Trans. Co.,* 61 N.J. 502, 295 A.2d 862 (1972); *De Angelis v. Lutheran Medical Center,* 84 A.D.2d 17, 445 N.Y.S.2d 188 (1981), *aff'd,* 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (1983); *Morgel v. Winger,* 290 N.W.2d 266 (N.D.1980); *Gibson v. Johnston,* 75 Ohio App.2d 413, 144 N.E.2d 310 (Ohio Ct.App. 1956), *appeal dismissed,* 166 Ohio St. 288, 141 N.E.2d 767 (1957); *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982); *Roth v. Bell,* 24 Wash.App. 92, 600 P.2d 602 (Wash.Ct.App.1979).

6. *See, e.g., Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977).

7. *Clark v. Suncoast Hospital, Inc.,* 338 So.2d 1117, 1118–19 (Fla.Dist.Ct.App.1976), *citing* 54 Mich.L.R. 1023 (1956).

relief can be granted may not be asserted for the first time on appeal. *See, e.g., Brule v. Southworth,* 611 F.2d 406, 409 (1st Cir.1979). *See also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1392, at 862 and the cases cited therein. If, however, the defense is actually raised in the trial court, it is not waived by failure to assert it in a specific manner, for example by a motion to strike under Rule 12(b). *See Smith v. Atlas Off-Shore Boat Serv., Inc.,* 653 F.2d 1057, 1060 n. 1 (5th Cir.1981).

██ Before judgment Ingram did file a memorandum in the district court denying that recovery might be had for such a claim. This pre-judgment argument sufficed.[8]

For these reasons the judgment is RE-VERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

**8.** *Cf. Black, Sivalls & Bryson, Inc. v. Shondell,* 174 F.2d 587, 590–91 (8th Cir.1949) (when the issue was not raised until after judgment on a motion for judgment n.o.v., claim was waived).