USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1664 JONATHAN C. HORSLEY, et al., Plaintiffs, Appellants, v. MOBIL OIL CORPORATION, Appellee. ____________________ No. 93-1736 JONATHAN C. HORSLEY, et al., Plaintiffs, Appellants, v. MOBIL OIL CORPORATION, Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Christopher M. Perry, with whom Brendan J. Perry and Terance P. ____________________ ________________ __________ Perry were on brief for appellants. _____ Brian P. Flanagan, with whom F. Dore Hunter and Flanagan & __________________ _______________ ___________ Hunter, P.C. were on brief for appellee. ____________ ____________________ February 3, 1994 ____________________ CYR, Circuit Judge. We must decide whether either CYR, Circuit Judge. _____________ punitive damages or damages for loss of parental and spousal society allegedly caused by a nonfatal injury to a seaman aboard a vessel in territorial waters are recoverable in an unseaworthi- ness action under the general maritime law. On plenary review, see Gaskell v. The Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir. ___ _______ _______________________ 1993), we affirm the summary judgment entered against plaintiffs- appellants based on the analysis required under Miles v. Apex _____ ____ Marine Corp., 498 U.S. 19 (1990). ____________ I I BACKGROUND BACKGROUND __________ Plaintiffs-appellants Jonathan C. Horsley and his wife, Elizabeth Horsley, allege that he sustained a back injury in the course of his duties aboard a vessel owned by defendant-appellee Mobil Oil Corporation while operating in the territorial waters of the Gulf of Maine. Their unseaworthiness action involves, inter alia, claims for punitive damages by Jonathan C. Horsley; _____ ____ and damages for loss of parental society by their minor son and loss of spousal society by Elizabeth Horsley. The district court entered summary judgment for Mobil on all three claims.1 ____________________ 1Jurisdiction over this interlocutory admiralty appeal is based on 28 U.S.C. 1292 (a)(3). See Martha's Vineyard Scuba ___ ________________________ Headquarters, Inc. v. Unidentified, Wrecked, and Abandoned Steam __________________ ___________________________________________ Vessel, 833 F.2d 1059, 1064 (1st Cir. 1987). ______ 2 _ II II DISCUSSION DISCUSSION __________ The Supreme Court has decided that damages for loss of society are not cognizable in a general maritime action for the wrongful death of a seaman, because "[i]t would be inconsistent _____ with [the Supreme Court's] place in the constitutional scheme were we to sanction more expansive remedies in a judicially- created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negli- gence." Miles, 498 U.S. at 33. The Court reasoned that the _____ remedial limitations imposed by Congress in admiralty actions predicated on negligence likewise restrict an admiralty court's power to fashion damages remedies in actions under the general maritime law, such as the present unseaworthiness claim against a vessel where liability may be imposed without establishing fault. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94-95 (1946) ___ __________________ ________ (noting unseaworthiness "is essentially a species of liability without fault"). Thus, the admiralty court's remedial autonomy is "both direct[ed] and delimit[ed]" by federal statute, Miles, _____ 498 U.S. at 27, insofar as Congress has spoken directly to the point in issue, id. at 31, citing Mobil Oil Corp. v. Higgin- ___ ______ ________________ _______ botham, 436 U.S. 618, 625 (1978). ______ Two statutes are directly relevant to general maritime claims based on fatal injury: the Death on the High Seas Act _____ (DOHSA), 46 U.S.C. 761, et seq., and the Jones Act, 46 U.S.C. __ ____ 688, both enacted in 1920. DOHSA makes specific provision only 3 _ for the recovery of damages for pecuniary loss. See 46 U.S.C. _________ ___ 762 ("The recovery . . . shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought . . . ."). Notwithstanding that the fatal injury at issue in Miles did not take place on the high seas, the _____ Supreme Court considered DOHSA indicative of congressional intent in cases involving fatal injuries to seamen in territorial waters as well. Miles, 498 U.S. at 31. _____ Since the Jones Act does afford a right of action to dependents of seamen fatally injured in territorial waters, it formed the principal focus of inquiry in Miles. The Jones Act _____ simply incorporated by reference the remedial scheme established twelve years earlier under the Federal Employee Liability Act (FELA), 46 U.S.C. 688. FELA, the progenitor of all federal liability schemes, simultaneously afforded a uniform cause of action for railroad workers and dispensed with traditional master-and-servant defenses. See generally Rogers v. Missouri ___ _________ ______ ________ Pac. R. Co., 352 U.S. 500 (1957). FELA's language is unhelpful ____________ on its face, however, as it simply provides for "damages," without further elaboration. 45 U.S.C. 51. This seeming dead-end is averted, nevertheless, by Congress's adoption and incorporation, in the Jones Act, of the remedial scheme previously established under FELA. The courts __________ may assume that Congress, at the time it enacted the Jones Act, was cognizant of the decisional law developed under FELA during the twelve-year interim between the enactment of the two stat- 4 _ utes. Miles, 498 U.S. at 32; see generally Cannon v. University _____ ___ _________ ______ __________ of Chicago, 441 U.S. 677, 696-97 (1979) ("It is always appropri- __________ ate to assume that our elected representatives, like other citizens, know the law . . . ."). The Miles Court relied extensively on just such a _____ decision, see Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59 ___ _______________________ ________ (1913), which revealed yet another evolutionary layer in the development of wrongful death statutes: In [Vreeland] the Court explained that ________ the language of the FELA wrongful death pro- vision is essentially identical to that of Lord Campbell's Act, 9 & 10 Vict. ch. 93 (1846), the first wrongful death statute. Lord Campbell's Act also did not limit ex- ____ __________ ___ plicitly the "damages" to be recovered, but that Act and the many state statutes that followed it consistently had been interpreted ____________ ___ ____ ___________ as providing recovery only for pecuniary __ _________ ________ ____ ___ _________ loss. ____ Miles, 498 U.S. at 32 (emphasis added), citing Vreeland, 227 U.S. _____ ______ ________ at 69-71. Finally, the Miles Court retraced the development of _____ wrongful death statutes into the Twentieth Century and the meaning of the unelaborated FELA term "damages" became clear: When Congress passed the Jones Act, the Vreeland gloss on FELA, and the hoary tradi- ________ tion behind it, were well established. In- corporating FELA unaltered into the Jones Act, Congress must have intended to incorpo- rate the pecuniary limitation on damages as well. We assume that Congress is aware of existing law when it passes legislation. There is no recovery for loss of society in a Jones Act wrongful death action. Id. ___ Uniformity provided the companion rationale for the Miles decision. See Moragne v. States Marine Lines, Inc., 398 _____ ___ _______ __________________________ 5 _ U.S. 375, 402 (1970) ("admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'" (quoting The Lottawanna, 88 U.S. (21 Wall.) 558, 575 ______________ (1875))). As noted, damages awarded under DOHSA are restricted to pecuniary loss. Miles cautions that the traditional gap- _____ filling function of the admiralty court is to be exercised only in furtherance of the presumed congressional objective of unifor- mity: We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal pro- tection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may sup- __ ___ ____ plement these statutory remedies where doing _______ _____ _________ ________ _____ _____ so would achieve the uniform vindication of __ _____ _______ ___ _______ ___________ __ such policies consistent with our constitu- ____ ________ __________ ____ ___ _________ tional mandate, but we must also keep strict- ______ _______ ___ __ ____ ____ ____ _______ ly within the limits imposed by Congress. __ ______ ___ ______ _______ __ ________ Miles, 498 U.S. at 27 (emphasis added). Thus, Miles "restore[d] _____ _____ a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or the general maritime law[,]" by limiting damages in wrongful death actions to the amount of pecuniary loss. Miles, 498 U.S. at 33. _____ A. Damages in Nonfatal-Injury Cases A. Damages in Nonfatal-Injury Cases ________________________________ The district court relied primarily on Murray v. ______ Anthony J. Bertucci Constr. Co., 958 F.2d 127 (5th Cir.), cert. ________________________________ ____ denied, 113 S. Ct. 190 (1992), in holding that Miles precludes ______ _____ punitive damages and damages for loss of society under the Jones Act. See also Smith v. Trinidad Corp., 992 F.2d 996 (9th Cir. ___ ____ _____ _______________ 6 _ 1993) (adopting Murray reasoning) (per curiam); and Lollie v. ______ ___ ______ Brown Marine Serv., Inc., 995 F.2d 1565 (11th Cir. 1993) (same). ________________________ For the reasons discussed below, we agree. Under the analysis obligated by Miles, we inquire _____ whether Congress has preempted all interpretive discretion on the part of the admiralty court as the traditional protector and benefactor of its wards in extending damages relief for non- ___ pecuniary loss in the present context. At the outset, we note distinctions pertinent to our inquiry. First, since DOHSA is inapplicable to nonfatal injuries sustained by a seaman aboard a vessel operating in territorial waters, it has no direct bearing on the damages remedies presently at issue. Accordingly, whatev- er direct analogic bearing DOHSA had in Miles is diminished in _____ the present context. Second, as concerns the Jones Act, Vreeland ________ is inapposite to the availability of damages for nonpecuniary ___ loss in cases involving nonfatal injuries.2 The Miles methodolo- ___ _____ ____________________ 2At a time when wrongful death statutes were very much the exception, the Vreeland Court explicitly distanced its analysis ________ from that involved in nonfatal injury cases: This [wrongful death] cause of action is independent of any cause of action the dece- dent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had one proceeding on all togeth- ___ __________ __ ___ _______ er different principles. __ _________ __________ Vreeland, 227 U.S. at 68 (emphasis added). These "all together ________ different principles," of course, derived from Lord Campbell's Act, the first wrongful death statute: "It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only." Id. In sum, the evidence ___ directly adduced by the Miles Court is not particularly probative _____ 7 _ gy takes us beyond Vreeland, however. ________ In Igneri v. Cie. de Transports Oceaniques, 323 F.2d ______ ______________________________ 257 (2d Cir. 1963), the Second Circuit inquired into the avail- ability of damages for loss of society under the Jones Act and concluded as follows: The failure of the Jones Act to confer . . . a right [to loss of society/consortium damages] on the spouse of a seaman cannot be dismissed as an inadvertence. The policy of the Federal Employees Liability Act, the regime which the Jones Act made applicable to seamen, was that the new remedy for the employee was to be exclusive and that claims of relatives recognized by state law were to be abrogated; the FELA had been thus authori- ___ ____ ___ ____ ____ ________ tatively construed before the Jones Act was ________ _________ ______ ___ _____ ___ ___ passed. ______ Igneri, 323 F.2d at 266 (emphasis added), citing New York Cent. & ______ ______ ________________ H. R.R. v. Tonsellito, 244 U.S. 360 (1917) (FELA precludes claim _______ __________ brought by father for "loss of services" of minor son injured in course of employment with railroad). Finally, the thrust of the Supreme Court's holding in Tonsellito is that FELA affords a __________ remedy to injured workers and only to workers, not to their relatives: "Congress having declared when, how far, and to whom carriers shall be liable on account of accidents in the specified class, such liability can neither be extended nor abridged . . . ." New York Cent. & H. R.R., 244 U.S. 360, 362 (1917); see ________________________ ___ also New York Cent. R.R. v. Winfield, 244 U.S. 147 (1917); Erie ____ ____________________ ________ ____ R.R. v. Winfield, 244 U.S. 170 (1917). Thus, the Tonsellito ____ ________ __________ rationale ineluctably precludes the present claims for damages ____________________ beyond the discrete confines of wrongful death actions. 8 _ for loss of parental and spousal society.3 Similarly, compelling evidence precludes Jonathan Horsley's claim for punitive damages. "It has been the unanimous judgment of the courts since before the enactment of the Jones _____ ______ ___ _________ __ ___ _____ Act that punitive damages are not recoverable under" FELA. ___ Miller v. American President Lines, Ltd., 989 F.2d 1450, 1457 ______ ________________________________ (6th Cir. 1993) (emphasis added), citing Kozar v. Chesapeake & O. ______ _____ _______________ R. Co., 449 F.2d 1238, 1240-43 (6th Cir. 1971) (citing cases). ______ Once again, therefore, since the Supreme Court's authoritative interpretation of FELA antedated enactment of the Jones Act, Miles mandates the conclusion that punitive damages are not _____ available in an unseaworthiness action under general maritime law. III III CONCLUSION CONCLUSION __________ Under the analysis prescribed in Miles v. Apex Marine _____ ___________ Corp., 498 U.S. 19 (1990), an admiralty court may not extend the _____ remedies available in an unseaworthiness action under the general maritime law to include punitive damages or damages for loss of parental or spousal society. Accordingly, the district court ____________________ 3No court of appeals recognizes a claim for loss of parental society under general maritime law. Murray, 958 F.2d at 132 n.3, ______ citing De Loach v. Companhia de Navegacao Lloyd Brasileiro, 782 ______ ________ _______________________________________ F.2d 438 (3d Cir. 1986); and Madore v. Ingram Tank Ships, Inc., ___ ______ _______________________ 732 F.2d 475 (5th Cir. 1984)). Moreover, the cognizability of such claims in a minority of the states, Prosser & Keeton, Torts _____ 125 (5th ed. 1984), would provide no basis under Miles for _____ recognizing such a remedy in an action for unseaworthiness closely akin to a strict liability claim where it is not even widely available in nonadmiralty actions. 9 _ judgment must be affirmed. Affirmed. The parties shall bear their own costs. ________ ______________________________________ SO ORDERED. SO ORDERED. __ _______ 10 __