# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30499

United States Court of Appeals
Fifth Circuit

**FILED**
April 15, 2020

Lyle W. Cayce
Clerk

HENRY LUWISCH,

> Plaintiff - Appellee

v.

AMERICAN MARINE CORPORATION,

> Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, JONES, and COSTA, Circuit Judges.

PER CURIAM:

This case pits an injured seaman against his former employer. After a bench trial, the district court found that the employer was liable for most of the seaman's injuries and entered judgment accordingly. The employer now appeals, claiming a host of errors. Seeing none, we affirm.

## I.

### A.

On November 2, 2014, plaintiff–appellee Henry Luwisch was on board the M/V American Challenger, a vessel owned by his employer, defendant–appellant American Marine Corp. Luwisch was the chief engineer of the vessel, and one of his jobs that day was to store line on board. Luwisch climbed to the

upper deck of the vessel, where he had never previously been, to see whether there was room to store the line. He discovered that there was already line lying on the upper deck and that it was obstructing part of the walkway, creating a hazard. Luwisch then attempted to climb back down the ladder but in doing so tripped over the line and fell ten feet, to the lower deck. He was taken to the hospital, where a CT scan revealed damage to several of his cervical discs. Luwisch never returned to work for American Marine.

In December 2014 and again in February 2015, Luwisch saw Dr. William Alden, complaining of pain and numbness in his left arm and headaches, among other things. Dr. Alden found that Luwisch had damage to three of his cervical discs and referred him to Dr. Troy Beaucoudray for treatment. Between March 2015 and February 2016, Dr. Beaucoudray gave Luwisch a series of epidural steroid injections. These injections provided Luwisch only short-term relief, so Dr. Beaucoudray ultimately referred him to Dr. Bradley Bartholomew for surgery. But because of disagreements over who would pay, the surgery never took place.

Between March 2015 and June 2016, Luwisch worked intermittently as a mechanic for a series of different employers. In July 2016, Luwisch resumed working as a chief engineer. When applying for employment as a chief engineer, Luwisch denied having any previous neck injuries or neck pain. In May 2018, Luwisch quit his job and moved to Georgia to sell shrimp and run an RV park.

**B.**

In April 2017, when he was still living in Louisiana, Luwisch filed suit against American Marine, seeking maintenance and cure as well as compensatory damages. The case was tried without a jury, from July 23 to July 25, 2018.

No. 19-30499

Based on the evidence presented at trial, the district court determined that, after an unrelated workplace accident in 2011, Luwisch had been diagnosed with degenerative disc disease and a herniated disc. Because Luwisch had not disclosed this condition to American Marine when he applied for employment, the district court ruled that Luwisch was not entitled to maintenance and cure.

But the district court found that the placement of the line on the upper deck of the American Challenger rendered the vessel unseaworthy, and it also found that American Marine had violated its duty to provide Luwisch with a reasonably safe place to work. The court determined that the placement of the line directly contributed to Luwisch's fall and that American Marine was eighty-percent responsible for the accident. The court determined that Luwisch himself was twenty-percent responsible.

The district court heard medical expert testimony from both sides and determined that although Luwisch had degenerative disc disease before the accident, his condition was asymptomatic until the fall exacerbated it. The district court agreed with Luwisch that he could not continue to work as a chief engineer in the long term and thus had a diminished earning capacity. The district court awarded Luwisch damages—reduced by twenty percent due to his comparative negligence—based on his past medical expenses, past wage loss, loss of future earning capacity, and pain and suffering.

American Marine now appeals most aspects of the district court's decision. American Marine argues that (1) the American Challenger was not unseaworthy, (2) the district court incorrectly apportioned fault between the parties, (3) Luwisch's fall did not exacerbate his medical condition, (4) Luwisch does not have a diminished earning capacity, (5) Luwisch was not entitled to recover his medical expenses, and (6) the district court's pain-and-suffering award was excessive. We address each argument in turn.

No. 19-30499

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Barto v. Shore Constr., LLC*, 801 F.3d 465, 471 (5th Cir. 2015) (quoting *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009)). As such, we will upset the district court's findings of fact only if we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006)). As relevant here, findings of fact include determinations of negligence, apportionment of fault, and calculation of damages. *See DePerrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 356, 358, 361 (5th Cir. 2016). "Moreover, and of particular relevance here, the clearly erroneous standard of review following a bench trial requires even 'greater deference to the trial court's findings when they are based on determinations of credibility.'" *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quoting *In re Luhr Bros.*, 157 F.3d 333, 338 (5th Cir. 1998)). Accordingly, "[w]e entertain a strong presumption that the court's findings must be sustained even though this court might have weighed the evidence differently." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir. 2008).

## A.

"General maritime law imposes a duty upon shipowners to provide a seaworthy vessel." *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 74 (5th Cir. 1980) (citing *Carlisle Packing Co. v. Sandanger*, 259 U.S. 255 (1922)). "To be seaworthy, a vessel and its appurtenances must be reasonably fit for their intended uses." *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 379 (5th Cir. 2012) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)). "Liability under the doctrine of unseaworthiness does not rest upon fault or negligence." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354

(5th Cir. 1988). Instead, "a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing [an] injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.*

The district court found that "[t]he placement of the rope at the top of the ladder to the upper deck . . . rendered the vessel unseaworthy." It also found that the line "was not the result of an isolated negligent act" and that it "played a substantial part in causing Plaintiff's injury, and the injury was a reasonably probable consequence of the unseaworthiness." Although American Marine argues that the line's presence on the upper deck was "transitory in nature," it cites no caselaw for the proposition that the line must have lain on the deck for a particular amount of time to render the American Challenger unseaworthy, nor does it cite any evidence regarding how long the line had in fact lain there. Luwisch testified that he had never been to the upper deck before, and neither of the two deckhands—who were the only other people working on the boat—provided testimony. The district court thus concluded that the line had been there "for an extended period of time." American Marine has failed to demonstrate that the district court's finding of unseaworthiness was clear error.

**B.**

"A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.* (*Gautreaux II*), 107 F.3d 331, 335 (5th Cir. 1997) (en banc). Under the Jones Act, the employer's duty of care "retains the usual and familiar definition of ordinary prudence." *Id.*

Although "Jones Act negligence and unseaworthiness under general maritime law are two distinct causes of action," *Offshore Express*, 845 F.2d at 1354, they largely provide for the same remedies. Consequently, when we rule

No. 19-30499

"for [a] plaintiff on the issue of unseaworthiness, we [ordinarily] need not consider the question of Jones Act negligence." *Miles v. Melrose*, 882 F.2d 976, 983 (5th Cir. 1989), *aff'd sub nom. Miles v. Apex Marine Corp.*, 489 U.S. 19 (1990); *see, e.g.*, *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 375 n.3 (5th Cir. 1989).

"Comparative negligence applies in both Jones Act and unseaworthiness actions, barring an injured party from recovering for the damages sustained as a result of his own fault." *Miles*, 882 F.2d at 984. "Under the Jones Act and the law of unseaworthiness, contributory negligence, however gross, does not bar recovery, but only mitigates damages." *Offshore Express*, 845 F.2d at 1355.

American Marine has failed to establish that Luwisch's accident was mostly his own fault. The district court found that Luwisch was physically incapable of moving the line himself, in part because the rope had heavy wooden boards piled on top of it. And the court also found that Luwisch noticed a junction box with a loose electrical wire on the upper deck, near the line, that Luwisch determined needed to be repaired before the deckhands could safely climb up to help him move the line. These findings were supported by Luwisch's testimony at trial.

American Marine argues that Luwisch's testimony here is inconsistent, since Luwisch suggested that he noticed the loose wire only after he had decided to climb back down to the lower deck. But Luwisch also testified that he did not know where the two deckhands were at the time, because he could not see them from the upper deck. Luwisch testified that he intended to find the deckhands and, once he had noticed the loose wire, to find his tools for fixing the junction box as well. The district court evidently credited Luwisch's uncontroverted testimony and found that Luwisch was twenty percent at fault. American Marine has not shown this apportionment to be clearly erroneous.

No. 19-30499

American Marine observes that, under the Jones Act, an "employer must have notice and the opportunity to correct an unsafe condition before liability attaches." *Colburn*, 883 F.2d at 374. Yet "[t]he standard of care is not 'what the employer subjectively knew, but rather what it objectively should have known.'" *Id.* (citation omitted). "[A] corporate shipowner may be deemed to have constructive knowledge if the . . . negligent condition could have been discovered through the exercise of reasonable diligence." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 356 (5th Cir. 1991). Here, the district court found that "[t]he rope was routinely stored in that location by the vessel's regular crew" and "had been in that position for an extended period of time." Because American Marine points to no evidence contradicting this finding, constructive knowledge could be imputed to it.[1]

American Marine also seeks to rely on the primary-duty rule. In its original formulation, this rule barred an injured plaintiff from recovering from his employer if his injury resulted from his own failure to perform a duty of his employment. *See Walker v. Lykes Bros. S.S. Co.*, 193 F.2d 772, 774 (2d Cir. 1952). In this circuit, however, we have refused to adopt so strict a rule:

> [E]ven if an employee's injury resulted in part from his own negligence, whether in failing to carry out his duties or in some other respect, such negligence would only reduce, not bar, recovery unless the employer were not negligent at all and the employee's negligence was the sole cause of his injury.

*Kendrick v. Ill. Cent. Gulf R.R. Co.*, 669 F.2d 341, 344 (5th Cir. 1982); *see also Gautreaux v. Scurlock Marine, Inc.*, 84 F.3d 776, 782 (5th Cir. 1996), *reinstated*

---

[1] What is more, American Marine's liability for unseaworthiness, as opposed to negligence, does not require notice. *See Mitchell*, 362 U.S. at 549 ("[T]he shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability."); *Allen v. Seacoast Prods., Inc.*, 623 F.2d 355, 364 (5th Cir. 1980) ("Lack of knowledge of or opportunity to correct [unseaworthy] conditions does not mitigate the vessel owner's duty."), *overruled on other grounds by Gautreaux II*, 107 F.3d at 339.

*in pertinent part by Gautreaux II*, 107 F.3d at 339. This rule does not bar Luwisch from recovery.

Nevertheless, American Marine insists that Luwisch was more than twenty percent at fault because he was responsible for correcting any safety hazards on the vessel. But the district court found that Luwisch had not seen the line prior to the incident, and American Marine does not contest this finding. Because Luwisch could not have corrected a dangerous condition that he knew nothing about, we see no basis to conclude that Luwisch violated any purported duty to American Marine.

Finally, American Marine argues that Luwisch contributed to his injury by concealing his prior injury when he applied for employment. American Marine cites to *Cenac Towing*, in which we concluded that, under the Jones Act, "contributory negligence may be found where a seaman has concealed material information about a pre-existing injury or physical condition from his employer; exposes his body to a risk of reinjury or aggravation of the condition; and then suffers reinjury or aggravation injury." 544 F.3d at 303-04.

In *Cenac Towing*, we vacated a district court's decision for "reevaluat[ion]" where the district court had held that the plaintiff was not negligent at all despite finding a "causal link" between the plaintiff's injury and the plaintiff's intentional concealment of his medical condition. *Id.* at 302-04. To be sure, this case presents similar facts, insofar as Luwisch concealed his preexisting neck injury in order to obtain employment with American Marine and then, in the course of that employment, aggravated his neck injury. Here, however, the district court clearly evaluated the evidence and made no inconsistent findings about causation; indeed, it found that Luwisch was twenty percent at fault. *Cenac Towing* does not require vacatur, much less reversal.

No. 19-30499

**C.**

American Marine asserts that Luwisch's present ailments do not stem from his fall aboard the American Challenger, but it does not carry its heavy burden of demonstrating clear error in the district court's choice between competing experts. At trial, American Marine's expert, Dr. Everett Robert, testified that images from MRIs that Luwisch underwent in 2011 and 2015 did not show "any clinically appreciable changes" but only "some mild degenerative changes that [became] more advanced." Dr. Bartholomew, however, testified that some of the changes on the MRIs "were out of proportion to the time period." Similarly, Dr. Beaucoudray testified that there "appeared to be more than the normal rate of degenerative changes." Combining that with Luwisch's failure to complain of radicular pain until after his 2014 fall, Dr. Beaucoudray concluded that, "more probably than not," the 2014 fall caused Luwisch's symptoms. Crediting Dr. Beaucoudray's medical opinion on this point was not clear error.

Additionally, although some medical records indicated that Luwisch suffered from radiculopathy in 2011, Dr. Beaucoudray testified that this appeared to have been an intentional misdiagnosis designed to justify the cost of an MRI, and even Dr. Robert testified that Luwisch did not seem to have radiculopathy in 2011. The district court was not required to accept Dr. Robert's theory that Luwisch's symptoms were a delayed consequence of his 2011 accident.

**D.**

"A damages award for future lost wages should generally be based upon a seaman's work-life expectancy, meaning 'the average number of years that a person of a certain age will both live *and* work.'" *Barto*, 801 F.3d at 475 (quoting *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984)). A court may also consider "evidence that a particular person, by virtue of his health or

occupation or other factors, is likely to live and work a longer, or shorter, period than the average." *DePerrodil*, 842 F.3d at 361 (quoting *Madore*, 732 F.2d at 478).

Dr. Bartholomew testified that someone with Luwisch's injuries should not work on boats because the labor could aggravate his condition. Similarly, Dr. Alden testified that, for someone with Luwisch's cervical-disc injuries, working as a chief engineer would exacerbate his condition and, on a long-term basis, cause intolerable pain. The district court credited this testimony and found that Luwisch "is not able to return to his job as a chief engineer on offshore vessels and has suffered a loss of earning capacity." American Marine objects that Dr. Alden did not reexamine Luwisch before trial but presents no reason to infer that Luwisch's condition would have improved since his 2015 examination.

American Marine's observation that Luwisch did, in fact, work as a chief engineer after his fall does not compel reversal. The district court found that Luwisch was in pain throughout his post-accident employment despite taking over-the-counter pain medication—a finding that American Marine does not dispute—and consequently the court found that Luwisch worked only "out of economic necessity" and "would not be able to do so long-term."[2] Moreover, the evidence at trial was that Luwisch likely would not have been able to obtain these jobs had he been forthright with his employers about his injuries. American Marine does not dispute this either. Because Luwisch could not continue to work as a chief engineer without misrepresenting his condition to

---

[2] American Marine's argument that nearly everyone works "out of economic necessity" misses the point. Luwisch testified at trial that he returned to work only after liquidating his retirement account and spending all of his savings. In other words, the district court's finding was that Luwisch forced himself to do work that he physically should not have been doing because he needed money to pay his bills.

his employers and experiencing pain, the district court's finding of diminished earning capacity was not clearly erroneous.

Neither does Luwisch's subsequent decision to quit working as a chief engineer compel reversal. Although American Marine makes much of Luwisch calling this his "retirement," the evidence at trial was that Luwisch was planning to "start selling seafood and running an RV park in Georgia." That is to say, Luwisch was seeking to move into a less physically demanding line of work. As one of the experts correctly noted at trial, the calculation of future income is based on what Luwisch's future earnings would have been "[i]f the accident hadn't occurred." American Marine's only evidence that Luwisch would have taken an early retirement even if he had not gotten injured is Luwisch's statement at trial that, when he was working as a mechanic *after* his fall, he hoped that he would be "ready to retire" in five years. This is weak evidence that Luwisch would have intended to "retire" on the same timeframe had he not been so physically impaired.

### E.

Although the district court ruled that Luwisch was not entitled to maintenance and cure, the court nevertheless awarded Luwisch past medical expenses because of American Marine's negligence. American Marine suggests that the award of medical expenses vitiates the denial of maintenance and cure, but that argument is unavailing. *See Jauch*, 470 F.3d at 214 ("[T]he district court's denial of [the plaintiff]'s claim for maintenance and cure had no legal effect on his entitlement to recover Jones Act damages for his past medical expenses.").

American Marine also objects that Luwisch's medical expenses were paid for by his attorneys, but because the medical expenses were awarded on the Jones Act claim, the collateral-source rule applies. *See, e.g.*, *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1245 (5th Cir. 1994). "The collateral-source rule bars a

tortfeasor from reducing his liability by the amount the plaintiff recovers from independent sources." *DePerrodil*, 842 F.3d at 358. "In its simplest form, the rule asks whether the tortfeasor contributed to, or was otherwise responsible for, a particular income source. If not, the income is considered 'independent of (or collateral to) the tortfeasor,' and the tortfeasor may not reduce its damages by that amount." *Id.* at 358-59 (citation omitted) (quoting *Davis*, 18 F.3d at 1243). "Sources of compensation that have no connection to the tortfeasor are inevitably collateral." *Davis*, 18 F.3d at 1244.

As such, Luwisch's failure to prove that he was obliged to reimburse his attorneys for his medical expenses is irrelevant. [3] "In practice, the [collateral-source] rule allows plaintiffs to recover expenses that they did not personally have to pay." *DePerrodil*, 842 F.3d at 359. That is a permissible result: "better a potential windfall for the injured plaintiff than the liable tortfeasor." *Id.*

**F.**

"[A]ny amount awarded for pain and suffering depends to a great extent on the trial court's observation of the plaintiff and its subjective determination of the amount needed to achieve full compensation." *Offshore Express*, 845 F.2d at 1357 (quoting *Hernandez v. M/V Rajaan*, 841 F.2d 582, 590 (5th Cir. 1988)). Nevertheless, American Marine asserts that Luwisch is a serial liar whose testimony should not be credited and concludes that Luwisch "probably" "significantly exaggerated his complaints" such that his pain-and-suffering award "should be reduced by 80%."

Although the district court knew that Luwisch concealed his medical history from his employers, it nevertheless found Luwisch's trial testimony

---

[3] Because American Marine indisputably had "no connection with" the payment of Luwisch's medical expenses, it is "not a difficult task" to conclude that, under the rule, Luwisch's recovery should not be reduced. *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 930-31 (5th Cir. 1992). Indeed, American Marine does not argue to the contrary.

about his current condition credible. American Marine also points to evidence that Luwisch concealed his employment from Drs. Bartholomew and Beaucoudray, and it notes that Luwisch made some inconsistent statements at trial, regarding the date when his property was foreclosed upon and the length of time that he was unemployed. But again, all this information was before the district court, which had the unique ability to observe Luwisch and to judge his credibility. Because Luwisch "has told a coherent and facially plausible story that is not contradicted by extrinsic evidence," *Guzman*, 808 F.3d at 1036 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)), we cannot say that the district court clearly erred in crediting his testimony.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.