United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 09, 2006**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 28, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-30466
_____

JON ANTHONY JAUCH,

Plaintiff-Appellant,

versus

NAUTICAL SERVICES, INC.,

Defendant-Appellee/Cross-Appellant.

--------------------
Appeal from the
United States District Court
for the Eastern District of Louisiana
(2:01-CV-1261)
--------------------

Before WIENER and CLEMENT, Circuit Judges, and MARTINEZ, District

Judge.*

PER CURIAM:

Plaintiff-Appellant Jon Anthony Jauch was injured while

working as a seaman aboard a vessel owned and operated by

Defendant-Appellee Nautical Services, Inc. ("Nautical").  Jauch

sued Nautical in federal court seeking maintenance and cure under

general maritime law and damages under the Jones Act.  After a

bench trial, the district court (1) denied Jauch's demand for

maintenance and cure, (2) found Nautical and Jauch equally at fault

---

* District Judge for the Western District of Texas, sitting by
designation.

for the accident, (3) awarded Jauch general and special damages, and (4) denied Jauch prejudgment interest.  Jauch contends that the district court erred in (1) denying him maintenance and cure, (2) finding him 50% at fault for the accident, (3) awarding him only a portion of the past medical expenses that he sought, and (4) denying him prejudgment interest.  In its cross-appeal, Nautical contends that the district court erred in finding it 50% at fault and awarding Jauch any damages for medical expenses.  We conclude that the district court did not err in denying Jauch maintenance and cure or apportioning fault equally between the parties; however, the district court failed to provide sufficiently specific reasons to allow us to review its award of past medical expenses and its denial of prejudgment interest.  Thus, we affirm the district court's order denying maintenance and cure and apportioning fault, vacate its award of past medical expenses and its denial of prejudgment interest, and remand to allow the district court to consider those claims further and to provide more detailed analysis and reasons for its original decisions or any others that it may reach on remand.

## I.  FACTS & PROCEEDINGS

In October 1999, Nautical hired Jauch through a labor supplier, Crew Services, Inc., to work as a deckhand on its oceangoing tug, the M/V LA MADONNA.  In connection with his employment application, Jauch was required to undergo a physical

examination and complete a medical history questionnaire. On that questionnaire, Jauch indicated that he had never had back, neck, or spine trouble or received chiropractic treatment. In fact, Jauch had injured his back several times, most recently in a work-related incident six months earlier, after which he sought treatment from both an orthopedist and a chiropractor and filed a workers' compensation claim. Jauch also denied ever having any mental health issues despite his lengthy history of psychiatric treatment.

The physician that conducted Jauch's pre-employment physical examination testified that, had Jauch responded truthfully to the medical history questionnaire, he would not have been cleared to work until he provided documentation of his earlier injuries and additional evaluation was conducted. An operations manager for Nautical also testified that Crew Services typically notifies Nautical if a potential employee has disclosed a history of physical or mental problems, at which point Nautical investigates further before hiring the applicant.

Having no reason to doubt Jauch's fitness for service, Crew Services cleared him to join the crew of the M/V LA MADONNA immediately after he completed his physical examination. One week later, Jauch was injured while assisting the tug's captain and two other crew members move the vessel's johnboat ashore for maintenance. The johnboat was lashed to the rail of the vessel's second deck and had to be lowered to the first deck before being moved. Jauch was not specifically instructed as to the proper

procedure for lowering the johnboat but attempted to follow the captain's lead. He and the captain released the lines securing the johnboat on the second deck while the other crew members stood on the first deck waiting to take the boat, which weighed less than one hundred pounds. At some point, the line Jauch was holding slipped, and he was pulled forward by the weight of the boat, injuring his back. Despite reporting some pain shortly after the incident, Jauch continued to work that day and even did some weightlifting that afternoon.

In the days following the accident, Jauch's pain worsened, and he began to seek medical care. Nautical arranged for Jauch to see an orthopedist who diagnosed and treated his injury as a lumbosacral strain. After that orthopedist discharged him as having reached maximum medical improvement, Jauch continued to complain of back pain. He sought care from a series of doctors and eventually underwent lumbar disc fusion surgery in May of 2002.

Jauch filed suit against Nautical in April 2001 in the Eastern District of Louisiana, asserting claims for maintenance and cure under general maritime law and for damages under the Jones Act.[1] A bench trial was conducted in April 2003, and the court rendered a judgment in favor of Jauch, awarding him $61,828.84 for past medical expenses, $10,000 for future medical expenses, $44,619.24

---

[1] Jauch also sought damages for breach of the warranty of seaworthiness under general maritime law, but that claim was denied and is not at issue in this appeal.

for past wage loss, $16,094.08 for future wage loss, and $250,000 for general damages. The district court apportioned fault equally between Jauch and Nautical and declined to award Jauch prejudgment interest. Accordingly, Nautical was ordered to pay Jauch $191,271.08.

## II. ANALYSIS

### A. Issues on Appeal

Jauch contends that the district court erred in four ways: (1) misapplying the McCorpen rule[2] to deny his claim for maintenance and cure benefits, (2) finding that his failure to take proper care in lowering the johnboat rendered him 50% at fault for the accident, (3) awarding him only $61,828.84 for past medical expenses when he submitted bills at trial totaling $85,165.12, and (4) denying him prejudgment interest absent a finding of "peculiar circumstances" justifying its denial.

Nautical cross-appeals, contending that the district court erred in finding it 50% at fault and awarding Jauch any damages for medical expenses after having denied his claim for cure.

### B. Discussion

#### 1. Maintenance and Cure

##### a. Standard of Review

---

[2] McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968)(discussed fully infra).

5

In addressing a district court's decision to deny or award maintenance and cure payments, we review its findings of fact for clear error and its conclusions of law <u>de</u> <u>novo</u>.[3]

b.   Applicable Law

Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel.[4]   The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment.[5]   A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed.[6]

In cases involving pre-existing conditions, courts distinguish between nondisclosure and concealment.   If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition "when in [the seaman's] own opinion the shipowner would consider it a matter of importance."[7]   If, however,

---

[3] <u>Silmon v. Can Do II, Inc.</u>, 89 F.3d 240, 242 (5th Cir. 1996).

[4] <u>McCorpen</u>, 396 F.2d at 548.

[5] <u>Id.</u>

[6] <u>Id.</u>

[7] <u>Id.</u> at 548-49.

6

the vessel owner does require the seaman to submit to medical examination as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits.[8] Concealment of one's condition will not preclude recovery of maintenance and cure under all circumstances. The concealment defense will only prevail if the vessel owner can show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit.[9] If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure.

### c. Conclusion

In this case, Nautical has clearly met the McCorpen test. Jauch was required to undergo a physical examination and complete a medical questionnaire specifically designed to elicit information about past injuries or health problems. Jauch concealed numerous instances of back injury and mental health problems, disclosure of which would have either prevented his employment, or at least

---

[8] Id. at 549.

[9] Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005).

delayed it, preventing his having been present on the M/V LA MADONNA at the time of the accident. Past instances of back injury, some severe enough to require extensive treatment, are certainly facts material to Nautical's decision to hire Jauch as a deckhand, and the injury Jauch suffered is virtually identical to the non-disclosed injuries. The district court's application of the McCorpen rule to bar Jauch's recovery of maintenance and cure in this case is unassailable.

### 2. Apportionment of Fault

#### a. Standard of Review

We review a district court's finding of negligence and apportionment of fault for clear error.[10] The clear error standard precludes reversal of a district court's findings unless we are "left with the definite and firm conviction that a mistake has been committed."[11]

#### b. Applicable Law

Comparative negligence may apply to reduce a seaman's recovery on a Jones Act claim.[12] A seaman's contributory negligence will not

---

[10] <u>Verdin v. C & B Boat Co.</u>, 860 F.2d 150, 154 (5th Cir. 1988).

[11] <u>Anderson v. City of Bessemer</u>, 470 U.S. 564, 573 (1985).

[12] <u>Miles v. Melrose</u>, 882 F.2d 976, 984 (5th Cir. 1989), <u>aff'd sub nom. Miles v. Apex Marine Corp.</u>, 498 U.S. 19 (1990).

bar his recovery, but may reduce the amount of damages owed proportionate to his share of fault.[13]

###### c.   Conclusion

We need not tarry long here.   Both Jauch's appeal and Nautical's cross-appeal on this issue must fail.   The district court had ample evidence to support its conclusion that (1) Jauch was negligent in failing to remain attentive to his task and failing to secure his rope while lowering the johnboat, and (2) Nautical, through the tug's captain, was negligent in failing to instruct Jauch on the proper procedure for lowering the boat. Moreover, the district court had the best opportunity to assess the relative degree of fault that each party should bear for the occurrence of the accident.   Its decision to apportion fault equally between Jauch and Nautical was not clearly erroneous.

### 3.   Medical Expenses

###### a.   Standard of Review

A district court's damages award is a finding of fact, which this court reviews for clear error.[14]   The conclusions of law underlying the award are reviewed de novo.[15]

###### b.   Nautical's Cross-Appeal

---

[13] Id.

[14] Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc., 414 F.3d 546, 552 (5th Cir. 2005)

[15] Id.

We first address Nautical's contention that, because the district court denied Jauch's claim for maintenance and cure, it erred in awarding him damages for past medical expenses. Nautical suggests that allowing Jauch to recover damages for past medical expenses based on Nautical's negligence would allow him "to get through the back door (special damage award), what he could not get through the front door (cure)." It is well-settled, however, that "the seaman's right to receive, and the shipowner's duty to pay, maintenance and cure is independent of any other source of recovery for the seaman (e.g., recovery for Jones Act claims)."[16] Accordingly, the district court's denial of Jauch's claim for maintenance and cure had no legal effect on his entitlement to recover Jones Act damages for his past medical expenses.

### c. Computation of the Award

Jauch contends that the district court erred in awarding him only a portion ($61,828.84) of the total amount ($85,165.12)[17] of medical expenses that he incurred as a result of the accident. In its order, the district court did not explain how it calculated Jauch's medical expenses. It appears to have adopted the figure

---

[16] Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1013 (5th Cir. 1994).

[17] On appeal, Jauch asserts that as of April 12, 2004, the date that the parties' post-trial memoranda were filed, he had actually incurred over $93,000 in medical bills. Arriving at an exact figure is not necessary to resolve this appeal, but we will use the amount listed as the total on the summary of the bills submitted into evidence at trial.

proposed by Nautical in its post-trial memorandum, but it did so without expressly crediting Nautical's justifications for disallowing a portion of the amount Jauch sought. Had Nautical presented a more thorough accounting of Jauch's medical expenses, we would be justified in attributing that calculus to the district court, just as we would have done had Jauch been awarded the full amount that he sought without comment by the district court.

Nautical's post-trial memorandum, however, is insufficient for this purpose. In it, Nautical mentions two of Jauch's bills that it assumes were paid by Nautical, but focuses primarily on the expenses related to Jauch's back surgery. Nautical argues that Jauch should only recover the amount that Medicare actually paid for the surgery because it found no evidence that the surgeon had attempted to collect the balance of the bill from Jauch. After calculating the difference between the two amounts, Nautical simply asserts that "the true measure of plaintiff's total medical bills would be $61,828.84." Even though Nautical's proffered rationale may provide an appropriate basis for calculating an award of medical expenses, in this case, the numbers simply do not add up. Merely subtracting (1) the difference in the amount Medicare paid for Jauch's surgery and the amount the surgeon charged, and (2) the two bills allegedly paid by Nautical from the total amount of medical expenses Jauch sought, does not produce the figure proposed by Nautical and awarded by the district court. Whether the Medicare-payment rationale was applied to other bills as well, or

11

some other amounts were disallowed, is simply unclear from the record. Thus, a review of this award for error is not possible. A further round of briefing and a more detailed finding by the district court should resolve this matter easily enough.

    4.   Pre-Judgment Interest

        a.    Standard of Review

A district court's ruling on prejudgment interest is reviewed for abuse of discretion.[18]

        b.    Applicable Law

Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.[19] Prejudgment interest is not available on future damages.[20] Courts have generally recognized that the award of prejudgment interest may be appropriate in Jones Act cases tried in admiralty.[21] Indeed, it is generally accepted that, under maritime law, the award of prejudgment interest is "well-nigh automatic."[22]

---

[18] CenterPoint Energy Houston Elec., L.L.C. v. Harris County Toll Rd. Auth., 436 F.3d 541, 550 (5th Cir. 2006).

[19] Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 613 (5th Cir. 2000).

[20] Williams v. Reading & Bates Drilling Co., 750 F.2d 487, 491 (5th Cir. 1985).

[21] Domangue v. Penrod Drilling Co., 748 F.2d 999, 1000 (5th Cir. 1984).

[22] Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026, 1028 (5th Cir. 1986).

12

Such an award, however, has never been <u>actually</u> automatic.[23]  As the Supreme Court noted in <u>The Scotland</u>, the "allowance of interest on damages is not an absolute right. Whether it ought or ought not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject . . . ."[24]  Particular circumstances will justify a district court's denial of prejudgment interest, chief among these being a plaintiff's responsibility for "undue delay in prosecuting the lawsuit."[25]  Other circumstances may appropriately be invoked as warranted by the facts of particular cases.

c.  Conclusion

Jauch contends that no peculiar circumstances existed that would warrant the district court's denial of prejudgment interest in this case.  Nautical responds that Jauch was himself responsible for any delay in his recovery because he waited a year and a half to file suit and had the trial continued on three separate occasions.  The district court, however, gave no reasons for its denial of prejudgment interest, stating simply that "the Court exercises its discretion to not award prejudgment interest."  Thus,

---

[23] <u>City of Milwaukee v. Cement Div., Nat. Gypsum Co.</u>, 515 U.S. 189, 196 (1995).

[24] 118 U.S. 507, 518-519 (1886).

[25]  <u>General Motors Corp. v. Devex Corp</u>., 461 U.S. 648, 657 (1983).

13

we cannot conduct the required review and must remand for a more detailed analysis.[26]

### III.  CONCLUSION

For these reasons, we (1) AFFIRM the district court's order denying Jauch's claim for maintenance and cure and apportioning fault equally between Jauch and Nautical, (2) VACATE the award of past medical expenses and the denial of prejudgment interest and REMAND to allow the district court to consider these claims further and to provide more detailed analysis and reasons for such decisions as it may reach.

---

[26] See CenterPoint, 436 F.3d at 550 (district court's summary denial of prejudgment interest and attorney's fees not reviewable for abuse of discretion).