IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-30734

TRACY DURLEY

Plaintiff-Appellee

v.

THE OFFSHORE DRILLING COMPANY

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-5681

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

This is an interlocutory appeal of a district court's order invalidating a seaman's release.[1]   Tracy Durley ("Durley") was employed by the Offshore

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Durley also asserts that this Court lacks jurisdiction because Appellate Rule 4 required TODCO to file notice of its appeal within thirty (30) days of the entry of the district court's appealable judgment or order, the Findings of Fact and Conclusions of Law entered on February 23, 2007 (the "Findings").  This argument is without merit because TODCO did indeed timely file its Notice of Interlocutory Appeal ("Notice"). TODCO filed its Notice on August 8, 2007.  The district court issued the Findings in accordance with Federal Rule of Civil Procedure 52(a), but did not enter judgment in

Drilling Company ("TODCO") as a seaman on an inland drilling barge owned and operated by TODCO. On July 2, 2006, Durley was injured in an accident on his rig, and he suffered various injuries. On or about July 12, 2006, representatives of the company offered Durley $3,000 to release any and all claims arising out of the July 2 accident.

Durley was diagnosed by multiple doctors prior to August 10, 2006, none of which diagnosed him with torn ligaments in his left knee or with a herniated disc in his cervical spine. This was partly due to the fact that Durley withheld that he was experiencing pain in those areas because he desired to return to work. Thus, the extent of the medical diagnosis was of severe bruising. On August 10, 2006, Durley executed release documents (the "Release") purporting to settle all claims arising from the accident. After signing the Release, Durley was diagnosed with the aforementioned injuries.

Counsel for TODCO, in the presence of a court reporter, explained in detail the terms of the Release before Durley signed. The Release stated, in relevant part, that Durley agreed to release TODCO "of and from any and all past, present and/or future claims, demands, causes of action and rights of action whatsoever, which he may or might have and/or which may hereafter accrue to him, whether known or unknown, foreseen or unforeseen." The Release also stated that Durley relinquished "any and all claims, demands, causes of action

accordance with Rule 58. Rule 58 requires that a judgment be set out in a separate document. FED. R. CIV. P. 58(a). Thus, under Rule 58, judgement is entered, if a separate document is required, at the earlier of either (a) "it is set out in a separate document" or (b) "150 days have run from entry in the civil docket." FED. R. CIV. P. 58(c)(2). Because the district court did not set out the judgment from the Findings on a separate document, the Findings were deemed entered for purposes of appeal on July 23, 2007. TODCO's Notice was therefore timely.

and rights of action which [Durley] may or might have under . . . any . . . laws whatsoever for past, present and/or future bodily and personal injuries . . . and all consequences thereof, whether known or unknown, proximate or remote." Additionally, the Release stated that Durley "warrants that he is fully aware that his condition may grow worse than it is, or seems to be . . . [and] is completely giving up and discharging any and all rights he may have against [TODCO]." These provisions were explained to Durley and he acknowledged that he understood them.

Durley filed an action against TODCO pursuant to the Jones Act, 46 U.S.C. App. § 688(a), and general maritime law for personal injuries he allegedly received from the accident of July 2, 2006. TODCO pled the Release as a defense to the suit and also filed a compulsory counterclaim for indemnity against Durley. The district court held a bench trial on the validity of the Release and found that because none of the doctors had diagnosed the torn ligaments in Durley's left knee and the herniated disc in his cervical spine, neither Durley nor TODCO were aware of the nature of his injuries. Thus, the district court found that when he signed the Release, both parties thought that severe bruising was the extent of Durley's injuries. The district court held that because both parties shared the mutual mistake of diagnosis of Durley's injuries, the Release should be set aside and TODCO's counterclaim dismissed. The district court did not reach the remaining grounds Durley urged in support of his argument that the Release was invalid. For the following reasons, we vacate and remand.

I.

"On appeal, a district court's conclusion regarding the validity of a seaman's release will be reversed only if the conclusion is clearly erroneous." Castillo v. Spiliada Mar. Corp., 937 F.2d 240, 245 (5th Cir. 1991); see also

Transocean Offshore USA Inc. v. Catrette, 256 Fed. Appx. 672, 673 (5th Cir. 2007) (per curiam). Questions of law, of course, we review de novo. See, e.g., Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006) (citation omitted).

## II.

The validity of a seaman's release is governed by general maritime law. Robertson v. Douglas S.S. Co., 510 F.2d 829, 834–35 (5th Cir. 1975) (citations omitted). Such a release is dependent on whether, at the time of relinquishing his rights, the seaman had "an informed understanding of his rights and a full appreciation of the consequences." Borne v. A&P Boat Rentals No. 4, Inc., 780 F.2d 1254, 1256 (5th Cir. 1986) (citations and internal quotation marks omitted). In applying this standard, we are "sensitive to whether the parties have negotiated at arms-length and in apparent good faith, whether the competency of counsel or the adequacy of medical or legal advice is questioned, and whether there is any appearance of 'taint or fraud, deception, coercion or overreaching . . . in the negotiations eventuating in the settlement.'" Id. at 1256–57 (quoting Strange v. Gulf & S. Am. Steamship Co., 495 F.2d 1235, 1236 (5th Cir. 1974)). Additionally, we have been willing to consider the adequacy of the settlement consideration inasmuch as it is relevant to indicate whether the seaman had a full understanding of his rights and of the consequences. Id. at 1257 (internal quotation omitted). "The ultimate concern . . . is not whether the seaman has received what the court believes to be adequate consideration, but rather whether the seaman relinquished his rights with an informed understanding of his rights and a full appreciation of the consequences when he executed a release." Simpson v. Lykes Bros. Inc., 22 F.3d 601, 602 (5th Cir. 1994) (quoting

Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599, 606 (5th Cir. 1986)) (internal quotation marks omitted).

A seaman's release should be set aside for mutual mistake if neither party understood the nature of the injury, as opposed to its extent. Rogers v. Trico Marine Operators, Inc., No. 98-30094, 1998 WL 870688, at *3 (5th Cir. Dec. 2, 1998) (citing Robertson, 510 F.2d at 836). "A longshoreman who signs a release may have to take his chances that [with] a properly diagnosed condition . . . his injuries may be more serious and extensive than originally thought." Id. (quoting Rogers, 510 F.2d at 836). "[T]he law does not require him to take his chances when the diagnosis is itself erroneous and he is suffering from a disease entirely different in nature than that diagnosed." Id. (emphasis in original). Where both parties completely misunderstood the nature of the injury, then, we have set aside a release for mutual mistake. Id. ("Robertson signed the release with the understanding that the nature of his injury consisted of superficial injuries . . . . injury that was later discovered demonstrated a mistake of fact that went not merely to the extent and outcome of his injury, but indicated that the was the victim of an injury entirely different in nature from that diagnosed.").

This case has a release similar in many ways to the release in Simpson. In that case, the release clearly stated that Simpson released his employer from liability for all injuries sustained, including "future and unknown damages, as well as such damages as are now known to have occurred." 22 F.3d at 602. Indeed, the injuries that Simpson sustained were even more remote, unknowable, and unpredictable than in the instant case, because he argued that the release was limited to his back injury and did not include his subsequently

discovered hearing loss.  Id.  This Court held that the "district court correctly rejected Simpson's argument that the release does not cover his hearing loss because he was unaware of this injury when he signed the release" because "[t]he release expressly covers unknown events and exposures as well as future damages both known and unknown."  Id.

In the instant case, Durley signed a release similar to that in Simpson that expressly covers any worsening of his condition subsequent to signing the Release, both known and unknown at the time.  Both the express language of the Release and his exchange with TODCO's counsel make it clear that Durley understood he was relinquishing his rights for all injuries even if they were unknown.  Per Simpson, then, the doctrine of mutual mistake is unavailable to him to avoid the agreement.

Durley argues that this Court's decision in Rogers should control.  Because neither Durley nor TODCO knew of the nature of Durley's knee and neck injuries, and no doctor had at the time of the Release properly diagnosed these injuries, Durley argues that the parties acted pursuant to a mistake in underlying fact.  In Rogers, however, the longshoreman "settled his claims fully aware that he was suffering from a spine injury" and this Court found that "any mistake made . . . was only to the extent and eventual outcome of Rogers's injuries."  Rogers, 165 F.3d 24, at *3.  In the instant case, it is true that no doctor had diagnosed Durley's knee and neck injuries, but this is partly due to Durley's decision not to disclose the injuries to his doctors because he wanted to return to work.  Durley admitted in his testimony that he knew, at the time of signing the Release, that he had injuries to his knee and neck; his argument that an error in diagnosis causes a mutual mistake of fact is therefore unavailing

because the mistake was not truly mutual.

It should be noted that there are specific facts distinguishing this case from Simpson, namely that Simpson was represented by counsel, that Simpson conceded that he did not sign the document under duress, and that the amount of consideration did not support a finding that he was uninformed of his rights or that he did not recognize the consequences. In this case Durley had no representation, there was evidence that he was under economic duress and that TODCO knew of this condition, and TODCO provided substantially less consideration. Due to these distinguishing facts, facts specifically relevant to a determination regarding the ultimate conclusion of whether a release should be deemed valid, we must remand to the district court to give it an opportunity to consider whether any of Durley's alternate grounds for upsetting the Release should be accepted.

## III.

For the foregoing reasons, the district court's order upsetting Durley's Release on grounds of mutual mistake is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.