**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-30007

JAMES CAREY

Plaintiff - Appellee - Cross-Appellant

v.

HERCULES OCEAN CORP; BELSHIPS MANAGEMENT SINGAPORE
PTE, LTD

Defendants - Appellant - Cross-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-6057

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

James Carey filed suit in the district court under the Longshore and Harbor Workers' Compensation Act, alleging that he was injured while serving as a member of a longshoremen's crew securing the mooring lines of a large oceangoing vessel. The district court conducted a bench trial and apportioned 60% fault to Carey and 40% to Hercules.

We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

After a bench trial, the validity of findings "of fault, including determinations of negligence and causation, are factual issues, and may not be set aside on appeal unless clearly erroneous." *In re Omega Protein, Inc.*, 548 F.3d 361, 367 (5th Cir. 2008). The district court's conclusions must stand "unless we are left with the definite and firm conviction that a mistake has been committed." *Jaunch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006).

James Carey was injured in September 2004 while working as one of five longshoremen mooring the M/V *Stove Transport* at a terminal on the Mississippi River between New Orleans and Baton Rouge. Carey's theory of negligence is as follows. His crew, standing on a platform extending from the shore, had just stopped pulling on their end of a mooring line. A few seconds after Carey's crew created some slack in the line, and only as a result of the crew on the ship releasing their end, the portion of the line between the two crews fell into the water. The forces generated by the falling line hitting the water jerked Carey towards the ship and into a handrail, severely injuring his back.

The ship's operator, Hercules Ocean Corporation, argues that "the cause of [Carey] being pulled into the rail was his crew slacking off the heaving line." Hercules's point is that once Carey's own crew released the heaving line, the mooring line – which was draped across Carey – pulled Carey towards the rail. Hercules further contends that letting out additional line by the ship could only have caused Carey to fall away from the ship, not towards the rail.

On appeal, Hercules argues that Carey's theory of causation is not only unsupported by the evidence, but the theory in essence violates the laws of physics. The physical forces exerted by the line as it fell, the timing of the line's fall compared to Carey's fall, and the impact of the longshoremen's releasing their end of the line, are all less than definitively shown. The question now is whether there was too little proof to support allocating fault to Hercules at all.

This case required the district court, and now this one, to focus on the rule that proximate cause may not be established by speculation or conjecture, but instead must be based on evidence that provides some probative force. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 289 (5th Cir. 2007). Even so, proximate cause can be based on inferences arising from the factual circumstances presented. *Id.* We find evidence of causation in the testimony of Carey's crew about the line hitting the water and Carey's simultaneous fall or pull towards the railing.

Hercules argues that the accident could not have occurred in this way. It posits that the physical laws involved are completely demonstrated by understanding the game of tug-of-war. There, after a line begins to be pulled in opposite directions by two different teams, the release by one team of its line must cause the other team to fall away from, not towards, the releasing team. The problem with this simple analogy is that Carey's theory, supported by some evidence, is that Carey's crew ended their part of the tug-of-war at some point prior to the injury. At about the same time, the ship's crew released their end of the line. That release caused slack in the long line initially to increase as the portion between ship and shore fell towards the water. The line's falling into the water, while Carey stood adjacent to but well above the water holding one end of the line over his shoulder, created the physical force that pulled Carey down. The collision of his back with the railing both stopped and injured him. Rather than a simple tug-of-war, the events of this case reveal many variables.

Hercules leaves us with the sense that it believes any competent physicist would know that a downward force from the level at which Carey was standing would not be caused when the line hit the water. For purposes of this lawsuit, the operation of such physical laws had to be proven satisfactorily in a court of law. The credibility and persuasiveness of experts are to be weighed by fact-finders as would be the testimony of any other witness. *Gebr. Bellmer Kg. v.*

3

*Terminal Serv. Houston, Inc.*, 711 F.2d 622, 626 (5th Cir. 1983). The expert for Hercules had not directly addressed the precise theory of causation in his calculations. The court did not find the expert's evidence persuasive. No clear error exists in that decision.

Hercules is correct that regardless of whether it proved the events could not have happened as Carey alleged, the burden was on Carey to prove that the ship crew's negligence played some role in his injuries. There was evidence that, when the line hit the water, Carey fell against the railing. It could be found a plausible explanation that the line, falling downward but still stretching back up to Carey's shoulder, might at some point start to pull down on him.

Causation often is proven by lay testimony. Expert testimony is unnecessary when the trier of fact is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are" expert witnesses. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). It is true that the testimony of an alleged eyewitness can be rejected when it is "unsupported by other evidence and [is] in the teeth of universal experience." *Ralston Purina Co. v. Hobson*, 554 F.2d 725, 729 (5th Cir. 1977). Perhaps Hercules's point is that a lay fact-finder would not know enough to realize what it did not know, that "universal experience" is inadequate here. Of course, evidence that Carey fell immediately after the line hit the water does not require a finding of a causal connection between the two. However, absent persuasive expert testimony to disabuse a fact-finder from a conclusion that otherwise would reasonably be drawn, there is nothing to prevent the conclusion. The expert evidence offered here was unpersuasive.

There was also evidence that the release of the line by the ship's crew was negligent. Both parties' experts agreed that, if Carey provided a clear signal, a failure on the part of the ship's crew to maintain control of their end of the mooring line would be negligence. Carey testified that he provided a clear signal

4

to stop paying out the mooring line, and the crew on the ship ignored it.  No clear error exists on finding some negligence by the ship's crew.

We find enough to sustain the assignment of some fault to Hercules. Carey invites us to proceed even further than did the district court, and reallocate fault on appeal such that Hercules bears a higher percentage of the responsibility.  The evidence supports the district court's finding that there was substantial fault that could be assigned to Carey and his crew.  There is no reason for us to alter the percentage allocation.

AFFIRMED.