**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1052

BENJAMIN G. HINES, JR.,

        Plaintiff - Appellee,

    v.

TRIAD MARINE CENTER, INCORPORATED, d/b/a Boats Unlimited NC;
JOHN BANISTER HYDE,

        Defendants - Appellants.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh. W. Earl Britt, District
Judge. (4:09-cv-00003-BR)

Argued: May 15, 2012           Decided: July 9, 2012

Before DAVIS and KEENAN, Circuit Judges, and James R. Spencer,
United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Keenan wrote the
opinion, in which Judge Davis and Judge Spencer joined.

**ARGUED:** Burley B. Mitchell, Jr., WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC, Raleigh, North Carolina; Julius Holman Hines, WOMBLE
CARLYLE SANDRIDGE & RICE, PLLC, Charleston, South Carolina, for
Appellants. Stevenson Lee Weeks, Sr., WHEATLY, WHEATLY, WEEKS &
LUPTON, PA, Beaufort, North Carolina; Charles R. Hardee, HARDEE
& HARDEE, Greenville, North Carolina, for Appellee. **ON BRIEF:**
Mary C. Adams, James R. Morgan, Jr., WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC, Winston-Salem, North Carolina; John T. Pion, L.

Lawson Johnston, PION, JOHNSTON, NERONE, GIRMAN, CLEMENTS & SMITH, PC, Pittsburgh, Pennsylvania, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this maritime personal injury case, Triad Marine Center, Inc. (Triad Marine), and its employee, John Banister Hyde (collectively, the defendants) appeal from the district court's judgment awarding more than $10 million in damages to Dr. Benjamin G. Hines, Jr. The district court's judgment was based on injuries Hines suffered during a sea trial of a boat offered for sale by Triad Marine. The defendants assert that the court committed clear error in concluding that they breached the standard of care, and in determining damages based in part on the court's finding that Hines no longer can engage in any gainful employment. The defendants also argue that their substantial rights were affected by the exclusion of evidence regarding Hines' disability insurance income, and that the court abused its discretion by applying the North Carolina statutory interest rate in the calculation of prejudgment interest. We disagree, and hold that the district court neither committed clear error nor abused its discretion. Accordingly, we affirm the district court's judgment.

I.

On March 20, 2006, Hines, a urologist who owns a condominium in Beaufort, North Carolina, was shopping for a boat

in New Bern, North Carolina.[1]  Hines and his wife owned a small flat-bottomed skiff, but they were looking for a larger boat that would provide a more comfortable ride and would minimize the "splash" they experienced during their boat outings. Accordingly, Hines visited Triad Marine and spoke with one of its employees, Hyde.  Based on Hines' description of his needs, Hyde recommended that Hines consider purchasing a Triton model 2286.  Hines requested a sea trial of the vessel, and Hyde agreed to bring the boat to Beaufort the following day.

Later that night, the National Weather Service issued a small craft advisory for the area, including Beaufort, effective from 5:00 a.m. on March 21 through the afternoon of the following day.[2]  Nevertheless, Hyde brought the boat to Beaufort, where Hines and his friend, Neil Wagoner, who previously had purchased a boat from Triad Marine, boarded the Triton.  From Beaufort, Hines drove the boat in a southeast direction toward Shackleford Banks.  On the inland side of Shackleford Banks,

---

[1] We describe the facts in this case in the light most favorable to Dr. Hines, the prevailing party in the district court.  See F.C. Wheat Mar. Corp. v. United States, 663 F.3d 714, 723 (4th Cir. 2011) (applying standard in admiralty case).

[2] On the east coast of the United States, from Maine to South Carolina, the National Weather Service issues a small craft advisory when sustained winds or frequent gusts are expected to range between 25 and 33 knots, or waves are expected between five and seven feet or greater.

where the waves were only about one foot high, Hines brought the boat to "planing speed."[3]

In order to achieve planing speed, Hines found that he had to attain speeds of about 20 miles per hour. Further, after reaching this speed, he observed that the boat began "porpoising," that is, the bow of the boat repeatedly dipped and rose during travel. When he had encountered porpoising during a sea trial in the past, Hines relinquished control of the boat to the salesman who had accompanied him. Accordingly, in the present sea trial, after experiencing the boat move in this manner, Hines asked Hyde to demonstrate the proper way to handle the boat.

As Hyde assumed the boat's controls, Hines moved aside, holding onto the "T-top" frame that surrounded the vessel's center console. With his left hand grasping the handle of the frame's vertical support, and his right hand holding onto the top of the frame, Hines was able to observe Hyde operating the boat. Once in control of the vessel, Hyde again brought the boat to planing speed.

The return trip took the party north of Beaufort Inlet. At this time, four-foot waves from the ocean were moving through

---

[3] Planing speed is the velocity at which an accelerating ship's hull rises to the top of the water's surface.

5

the inlet, and wind was blowing from the north at a speed of between 20 and 25 miles per hour. Without providing any warning, Hyde turned the boat directly into the oncoming waves passing through the inlet. Hyde then accelerated in a southerly direction, and struck an oncoming wave "head-on" that was between five and six feet in height.

As the wave passed beneath the boat, the bow lost contact with the water and rose into the air. Immediately thereafter, the bow "slammed back down," causing Hines to strike his head on the underside of the T-top. At this time, Hines fell to the deck, injuring both his ankles. Hyde had not warned the passengers about the oncoming wave, or of its potential to affect the boat's movement.

Upon the boat's return to the dock in Beaufort, an ambulance transported Hines to a nearby hospital. At the hospital, Hines learned that he had sustained a bimalleolar fracture to his left ankle, and a less severe injury to his right ankle. After receiving initial treatment at the hospital, Hines received additional medical care from Dr. Deanna M. Boyette, who performed surgery on his left ankle. Because Hines continued to complain of chronic pain in his left ankle, Dr. Boyette also referred Hines to Dr. Ronald M. Long for pain management.

Based on Hines' previous experience with pain medicines, Dr. Long prescribed Percocet, a medication containing a combination of acetaminophen and oxycodone, an opioid. Hines later reported experiencing cognitive impairment, which is a potential side effect of opioid use. Also, despite taking this medication, Hines reported that he was experiencing continuing chronic pain. Hines has continued to consult with Dr. Long regarding this ankle pain between two and four times per year. Because of this pain, and Hines' intake of opioids and their effect on his cognitive functions, Hines has withdrawn from the practice of medicine.

In January 2009, Hines filed a complaint under the admiralty jurisdiction of the district court, alleging one cause of action in negligence against Hyde and Triad Marine. After a four-day bench trial, the district court concluded that Hyde was negligent in his operation of the Triton, and that his negligence was imputed to Triad Marine, as Hyde's employer. The court also determined that Hines had a 20 percent permanent partial impairment with respect to his left ankle, which, together with his chronic pain and use of narcotics medication, prevented him from engaging in any gainful employment. Accordingly, the court entered judgment in the amount of $10,397,291.58, jointly and severally, against Hyde and Triad Marine. Included in this award were $900,000 in compensatory

7

damages for future pain and suffering, and $3,320,995.58 in prejudgment interest, which the court determined by using the North Carolina statutory interest rate of eight percent. The defendants timely appealed from the district court's judgment.

## II.

The defendants raise four challenges on appeal. First, they contend that the district court erred in finding that Hyde violated the standard of care applicable to a boat operator when piloting the Triton in Beaufort Inlet. Second, the defendants argue that the court clearly erred in concluding that Hines was totally disabled and was entitled to significant damages for lost wages and for future pain and suffering. Third, the defendants assert that the court committed reversible error by limiting their cross-examination regarding Hines' receipt of disability income. Fourth, the defendants contend that the court abused its discretion in using the North Carolina statutory interest rate in fixing the amount of prejudgment interest. We address these issues in turn.

## A.

We first consider the issue whether the district court erred in concluding that the defendants violated the standard of care applicable to a boat operator. In particular, the court found that Hyde was negligent in failing to reduce the speed of

8

the boat when necessary, and in failing to navigate properly the waves in Beaufort Inlet.

In reviewing a district court's factual findings, we examine the record for clear error, viewing the evidence in the light most favorable to the prevailing party in the district court. Martin v. Harris, 560 F.3d 210, 217 (4th Cir. 2009). In admiralty cases, issues of negligence are treated as factual issues, and therefore, are subject to the clearly erroneous standard of review. Id.

"It is axiomatic that credibility choices and the resolution of conflicting testimony are within the province of the court sitting without a jury," and are subject to review only under the clear error rule of Fed. R. Civ. P. 52(a). Parks v. Dowell Div. of Dow Chem. Corp., 712 F.2d 154, 159 (5th Cir. 1983) (quotation marks omitted) (applying standard in admiralty case). A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court considering all the evidence is "left with a definite and firm conviction that a mistake has been committed." Evergreen Int'l, S.A. v. Norfolk Dredging Co., 531 F.3d 302, 308 (4th Cir. 2008).

The defendants contend that present record contains no evidence, expert or otherwise, establishing a breach of the standard of care. We disagree.

9

Both Hines and his expert witness, Captain Donald Davis, provided evidence from which the district court could conclude that the defendants breached the standard of care. Using data gathered from a buoy located close to the Beaufort Inlet, Davis determined that waves in the area of Hines' accident varied between four and five feet in height at the time the accident occurred. Davis also testified that, given the wind conditions and the geography of the inlet, the interval of time between waves would have shortened as the Triton approached the area of the accident. Davis opined that under these conditions, vessels of the size and configuration of the Triton should have proceeded at idle speed and have approached the oncoming waves at an angle. Davis further concluded that the act of operating the boat at speeds between 15 and 20 miles per hour "straight over" a wave constituted a failure to exercise due care.

In challenging Davis' conclusion, the defendants focus on a single statement that Davis made during cross-examination. During their questioning, the defendants asked Davis whether he still would have concluded that Hyde failed to exercise due care if Hines had not suffered an injury. Davis replied, "[P]robably not."

When the defendants raised this issue before the district court, the court observed that the defendants successfully had elicited testimony from Davis that, absent the injury, he would

10

not have concluded that Hyde had failed to exercise due care. However, the court further observed that Davis had rehabilitated his testimony by opining that all the factors involved, including Hyde's navigation of the Triton under the prevailing conditions, contributed to his conclusion that Hyde breached the applicable standard of care.

We hold that Davis' expert opinion, when considered together with Hines' testimony, provided sufficient evidence to support the district court's conclusion that the defendants breached the standard of care. Hines testified regarding the height of the waves, the orientation of the vessel relative to the oncoming waves, and the porpoising that caused the bow of the Triton to leave the surface of the water. Additionally, Davis testified that in view of the conditions present during the small craft advisory, the proper operation of a vessel the size of the Triton required that the boat be operated at idle speed and approach oncoming waves at an angle. Given this testimony, we cannot say that we are "left with a definite and firm conviction that a mistake has been committed." Id. at 308.

B.

The defendants next raise a number of challenges to the district court's findings regarding Hines' damages. The defendants contend that the evidence did not establish that Hines was unable to return to work, and that objective evidence

11

in the record clearly refuted the court's finding that he was totally disabled. The defendants also maintain that Hines failed to mitigate his damages, and challenge the court's determination concerning Hines' pain and suffering.

1.

The defendants advance three reasons to support their contention that the district court clearly erred in concluding that Hines was unable to return to work. The defendants assert that the medical evidence established that Hines' ankle had healed, that Hines provided insufficient evidence of his continuing pain, and that the court did not give sufficient weight to a surveillance video, which showed Hines engaging in various post-injury activities. We find no merit in these arguments.

First, although Dr. Boyette testified that Hines' ankle had healed from the original trauma he sustained, she nevertheless concluded that Hines' left ankle has a 20 percent permanent impairment as a result of his injury. Therefore, the evidence supported the district court's conclusion that Hines suffers from a disability that will never completely "heal." The court further found that in addition to the permanent structural damage to Hines' left ankle, his disability also is based on the continuing pain he has suffered as a result of the injury. Although the defendants produced evidence from other witnesses

12

expressing contrary opinions regarding the permanent nature of Hines' injury, the district court acted within its discretion in crediting the testimony of Hines' experts over that of the defendants' experts.

Second, Hines' inability to return to work was supported by his own testimony concerning his degree of pain and suffering. Contrary to the defendants' suggestion, this type of testimony is not inherently weak simply because it rests on an injured party's own subjective assessment of pain. Such an assessment necessarily is subjective and defies any objective means of measurement. Further, Hines' pain management expert, Dr. Long, testified that Hines will require pain management for the rest of his life, that opioids were the only form of medication that provided Hines sufficient relief, and that Hines' pain would progressively worsen. Although the defendants produced testimony from other witnesses that, if believed, would have undermined this testimony from Dr. Long and Hines, such issues of credibility were properly resolved by the district court as the finder of fact.

The defendants argue, nonetheless, that certain surveillance footage taken of Hines after the accident shows that the district court clearly erred in determining that Hines is totally disabled. Citing our decision in Nicholson v. Mullis Engineering & Manufacturing Co., 315 F.2d 532 (4th Cir. 1963),

the defendants assert that the objective nature of the surveillance footage justifies a relaxation of the usual deference that we accord to a district court's factual findings, including the district court's conclusion here that Hines is totally disabled.

The defendants' argument is unpersuasive, however, because it essentially asks us to reweigh one piece of evidence and to afford it more weight than did the district court. After considering all the evidence, the district court determined that Hines' disability results from his chronic ankle pain, which can be managed effectively only by the use of narcotics. Moreover, the surveillance video does not undermine this conclusion, because the video fails to demonstrate that the activities recorded could not have been performed by a person having chronic ankle pain who must rely on the use of narcotics to manage that pain. Therefore, based on our review of the record, we are not "left with a definite and firm conviction that a mistake has been committed" with regard to the district court's disability determination. Evergreen Int'l, 531 F.3d at 308. Accordingly, we conclude that the district court did not clearly err in determining that Hines' injury, pain, and necessary medications prohibit him from pursuing gainful employment.

14

2.

The defendants also challenge the district court's decision awarding Hines $900,000 in compensatory damages for future pain and suffering. They contend that this award was clearly erroneous because it was not based on sufficient medical evidence. We disagree with the defendants' argument.

As described above, Dr. Boyette testified that Hines has a 20 percent permanent impairment of his left ankle, and Dr. Long testified that Hines' pain resulting from that injury will increase progressively in the future. Therefore, Hines presented evidence sufficient to support the district court's conclusion that he will continue to experience pain and suffering.

The defendants argue, however, that the amount of the court's award for future pain and suffering exceeds the bounds of reason and is punitive in nature. We are not persuaded by this argument.

Trial courts retain "great latitude" in assessing the proper amount of damages that should be awarded to an injured party. Parks, 712 F.2d at 160. An award for pain and suffering necessarily depends in large measure on the trial court's observations of the witnesses and the court's credibility determinations regarding their testimony. Id. On the record before us, we cannot conclude that the district court committed

15

clear error in awarding Hines $900,000 for future pain and suffering.

3.

The defendants also argue that the district court committed clear error in its award of damages, because the evidence showed that Hines failed to mitigate his damages. The defendants contend that undisputed medical evidence showed that Hines could alleviate some of his pain by losing weight and by using his cane in a different manner. These remedial actions, the defendants contend, could minimize the stress on Hines' ankle, possibly to the extent that he would no longer require narcotics for pain management. The defendants assert that without the cognitive impairment caused by narcotics, Hines may be able to resume gainful employment.

We reject this argument, because it is purely speculative in nature. There is no evidence in the record to support the defendants' contention that if Hines took the steps they suggest, his pain would decrease to a level that he would no longer require the use of narcotics.

C.

The defendants also contend that the district court committed reversible error in barring them from cross-examining Hines about the income he receives from disability insurance. We disagree.

16

We examine the district court's evidentiary ruling for abuse of discretion. United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011). Before trial, Hines requested that the district court prohibit the admission of evidence of payments from collateral sources. The defendants responded that they sought to introduce evidence of Hines' income received from disability insurance to challenge his credibility, rather than to show that he was receiving income from other sources as a result of his injury. The defendants argued that such evidence would show that Hines had no incentive to return to the practice of medicine.

With respect to the motion in limine, the district court observed that "it's pretty clear that evidence by defendant[s] of collateral source payments are not permissible." Nevertheless, the court allowed the defendants to cross-examine Hines about the information he provided on his disability insurance application. In sustaining Hines' objection to the defendants' attempt to question him about income he received from such insurance, the court ruled that the defendants "can go into what he made on the applications, but what he's getting [in the form of insurance proceeds] is irrelevant."

The defendants were permitted to question Hines regarding his multiple insurance policies, and they did so. The only restriction imposed on the defendants' questioning was their

17

ability to inquire about the actual amounts Hines was being paid based on his insurance policies. Under these circumstances, we conclude that the district court did not abuse its discretion in limiting the defendants' cross-examination in this regard.

D.

The district court, in an exercise of its discretion, applied the North Carolina statutory rate of eight percent[4] in calculating its award of prejudgment interest. The defendants argue that the court's application of this rate was unfairly punitive, and that, compared to the prevailing market rate of interest during the time period covering this award, the use of the North Carolina rate resulted in a windfall for Hines.

We review an award of prejudgment interest for abuse of discretion. Jauch v. Nautical Servs., 470 F.3d 207, 214 (5th Cir. 2006) (applying standard in admiralty case). "The award of prejudgment interest in admiralty cases rests within the sound discretion of the district court." Ameejee Valleejee & Sons v. M/V Victoria U., 661 F.2d 310, 313-14 (4th Cir. 1981).

Under maritime law, an award of prejudgment interest is "the rule rather than the exception, and, in practice, is well-

---

[4] This interest rate is set forth in N.C. Gen. Stat. § 24-1, which provides that "[t]he legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more."

nigh automatic." U.S. Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 828 (4th Cir. 1992) (quoting Reeled Tubing, Inc. v. M/V Chad G, 794 F.2d 1026, 1029 (5th Cir. 1986)). In setting the proper rate of prejudgment interest, admiralty courts "have broad discretion and may look to state law or other reasonable guideposts indicating a fair level of compensation." Todd Shipyards Corp. v. Auto Transp., S.A., 763 F.2d 745, 753 (5th Cir. 1985) (applying Louisiana statutory rate); see also Ameejee, 661 F.2d at 313-14 ("district courts are not bound by state statutory maximums in setting the rate of prejudgment interest in admiralty cases").

The defendants cite a number of cases from around the country in which our sister circuits have reversed awards of prejudgment interest. See, e.g., Ohio River Co. v. Peavey Co., 731 F.2d 547, 549-50 (8th Cir. 1984). However, such reversals generally have occurred because the district courts failed to provide adequate reasoning for the rates selected. See id. Other appellate decisions have vacated trial courts' use of certain interest rates because the methods of calculating the rates were unsound. See, e.g., First Nat'l Bank of Chicago v. Standard Bank & Trust, 172 F.3d 472, 480 (7th Cir. 1999).

In the present case, the district court, located in North Carolina and hearing a personal injury case arising within its admiralty jurisdiction, expressly elected to employ the North

19

Carolina statutory rate. We decline to hold that such an election constitutes an abuse of discretion.

The defendants assert, nevertheless, that the district court's determination was inconsistent with other calculations made by the court, creating a discrepancy that constituted an abuse of discretion. The defendants argue that the court's use of an eight percent rate for the prejudgment interest award cannot be reconciled with the court's use of a 4.11 percent rate when arriving at the "present value" determination regarding amounts of damages to be incurred in the future. We disagree with the defendants' argument.

In reaching its "present value" determination, the district court adopted the damages calculation presented by Hines' expert witness. It was only in this manner that the court employed the 4.11 percent rate. The court's adoption of that witness' calculations does not render invalid the court's independent election of the statutory rate for the assessment of prejudgment interest. Additionally, the determination of the 4.11 percent discount rate, to convert future dollars into present dollars, involved a fundamentally different task than the one of assessing interest on dollars remaining within the defendants' control from the date of the accident. Accordingly, we hold that the district court did not abuse its discretion by

employing two different interest rates in making the two distinctly different types of calculations.

## III.

In conclusion, we hold that the district court did not clearly err with respect to any of its factual findings or its awards of damages. We also conclude that the district court did not abuse its discretion with regard to its evidentiary rulings, or by using the North Carolina statutory interest rate in calculating the court's award of prejudgment interest. Accordingly, we affirm the district court's judgment.

<u>AFFIRMED</u>