# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31071

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2019

Lyle W. Cayce
Clerk

MANSON GULF, L.L.C.,

      Plaintiff - Appellant

v.

ANGIE LAFLEUR, Widow of James LaFleur and on behalf of minor children L.L., D.L., and B.L.,

      Defendant - Appellee

-------------------------------------------------------------------------------------------------

In re: In the Matter of Manson Gulf, L.L.C., as Bareboat Charterer of the Barge Marmac 262, for Exoneration from or Limitation of Liability

MANSON GULF, L.L.C., as bareboat charterer of the barge Marmac 262,

      Petitioner - Appellant

v.

ANGIE LAFLEUR, Widow of James LaFleur and on behalf of minor children L.L., D.L., and B.L.,

      Claimant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-3627
USDC No. 2:15-CV-6860

No. 18-31071

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

PER CURIAM:*

This case comes to us for the second time; the first time, we reversed the district court's grant of summary judgment in favor of the cargo company, Manson Gulf, L.L.C. ("Manson"), and against the family of the decedent (the "LaFleur Family") and remanded.  *See Manson Gulf, L.L.C v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 133 (5th Cir. 2017).  Upon remand, the case was tried before the district judge, and the LaFleur Family prevailed.  Manson now appeals.

## I.  Background

James LaFleur worked as an independent consultant for Modern American Recycling Service, Inc. ("MARS").  MARS dismantles steel structures and sells the metal for scrap.  As part of its business, it often acts as a stevedore, contracting to load or unload cargo from ships.

One of MARS's jobs was to dispose of an oil drilling platform, the BA A-23-A, dismantled by Manson.  Manson had removed the platform in two main sections, and due to corroded pad eyes on the platform, was required to lift the north section of the platform by wrapping chains around the legs of the platform section.  It also had to cut holes in the platform grating to pass chains through the deck.

When Manson shipped the platform to MARS, Manson informed MARS that there was potentially oil or other dangerous fluids present.  It did not, however, tell them about the location or size of the holes it cut in the platform

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31071

to transport it.  Nor did Manson mark or cover the hole through which LaFleur fell.

A MARS employee, Jeffrey Smith, performed an initial inspection of the platform, and he called LaFleur up to help him.  LaFleur was specifically called on to assess the potentially dangerous fluids, but also was expected to look out for other dangers.  While LaFleur and Smith inspected lines for fluid, LaFleur stepped into one of the unmarked, uncovered holes that Manson made for transport.  He fell fifty feet.  Though LaFleur was initially conscious for about fifteen minutes until the paramedics arrived, he later died. The LaFleur Family sued Manson, and Manson filed a suit for exoneration from or limitation of liability under 33 U.S.C. § 905(b).   After the first appellate panel reversed the summary judgment in favor of Manson, the parties proceeded to trial focusing on two core issues: whether the hole LaFleur fell through was obvious or anticipatable by him and whether LaFleur bore any fault for the fall.

Prior to trial, the district court excluded Manson's expert, William McCarty ("McCarty"), from testifying.  After hearing the other evidence, the district court ruled in favor of the LaFleur Family and entered judgment in excess of $4 million.  Manson appealed.

## II.   Jurisdiction and Standard of Review

The district court had admiralty jurisdiction over Manson's original contractual claim under 28 U.S.C. § 1333.  It had jurisdiction over Manson's exoneration and limitation claims under 46 U.S.C. § 30508.   We have jurisdiction over the appeal as a final decision under 28 U.S.C. § 1291.

We will not reverse a district court's admission or exclusion of expert testimony unless the decision is "manifestly erroneous."  *United States v. Norris*, 217 F.3d 262, 268 (5th Cir. 2000) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)).  After a bench trial, we review factual

findings for clear error and legal conclusions de novo. *See Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016). Thus, we can reverse under the clear error standard only when we have a "definite and firm conviction that a mistake has been committed." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006) (per curiam) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).

### III.    Discussion

Manson raises several points on appeal that can be grouped into four categories: (1) Was the decision to exclude McCarty reversible error? (2) Did the district court err in finding Manson liable to the LaFleur Family? (3) Did the district court erroneously exclude personal consumption from future earnings for its damage calculations? (4) Did the district court err in awarding prejudgment interest on future damages? We AFFIRM on the first three issues and VACATE and REMAND on the fourth.

### A.    Exclusion of Expert Testimony

The LaFleur Family sued Manson under 33 U.S.C. § 905(b), which permits stevedores to sue a vessel for negligence. As the Supreme Court has explained, vessels have a turnover duty and a related duty to warn. *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994). "A vessel must 'exercise ordinary care under the circumstances' to turn over the ship and its equipment and appliances 'in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care' to carry on cargo operations 'with reasonable safety to persons and property.'" *Id.* (quoting *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 417 (1969)). The vessel thus has a duty to warn a stevedore of any hazards which "'are known to the vessel or should be known to it in the exercise of reasonable care,' and 'would

likely be encountered by the stevedore in the course of his cargo operations[,] are not known by the stevedore[,] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.'" *Id.* at 98–99 (brackets in original). The LaFleur Family asserted that Manson violated its turnover duty by failing to warn MARS and LaFleur about the hole.

The parties dispute whether the hole was "obvious" or "anticipatable" by a competent stevedore. Manson contends that McCarty offered relevant expert testimony supporting Manson's argument that LaFleur should have discovered the hole.

As mentioned above, the standard for assessing expert testimony exclusion is highly deferential to the district court. The standard is even more deferential when the case is tried without a jury. *See S. Pac. Trans. Co. v. Chabert,* 973 F.2d 441, 448 (5th Cir. 1992) ("A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence."); *United States v. Roberts,* 887 F.2d 534, 536–37 (5th Cir. 1989) (finding harmless error under less deferential criminal case standard where expert testimony was wrongly excluded in a bench trial case); *see also Wu v. Miss. State Univ.,* 626 F. App'x 535, 537 (5th Cir. 2015)[1] (per curiam) (any error in admitting or excluding expert testimony is subject to the harmless error rule). In reviewing McCarty's proffered report, it is filled with generalities and conclusory allegations. Thus, even if the testimony was admissible, any error in excluding it was harmless such that no reversible error has been shown.

**B.     Sufficiency of the Liability Evidence**

Manson argues the district court erred in four ways in concluding that Manson was liable. First, it argues the district court incorrectly applied legal

---

[1] "An unpublished opinion issued after January 1, 1996 is not controlling precedent but may be persuasive authority." *Ballard v. Burton,* 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

standards and made clearly erroneous findings to determine the hole was an "obvious" condition.  Second, it argues the district court incorrectly applied legal standards and made clearly erroneous findings to determine that a "reasonably competent" stevedore would not anticipate the hole.  Third, the district court erred by issuing findings of fact that quote from this court's previous opinion in the case; the facts recited were part of the summary judgment record but not the trial record.  Fourth, the district court clearly erred by finding LaFleur free from fault.

The evidence supports the conclusion that the hole was not "obvious" and could have been missed even by a "reasonably competent" stevedore.  There was evidence that the hole was hard to see.  Further, the district court assessed the evidence that Manson "typically" marked holes and actually marked other holes combined with the difficulty of seeing this hole to conclude that a "reasonably competent" stevedore could have missed this one.  While it is true that the district court included some quotes from our prior opinion in this case, the evidence there cited was presented at trial, albeit in slightly different words.  Finally, while the court could have found fault on LaFleur, there was evidence to support the finding of no fault.  We affirm the finding of liability against Manson.

## C.    Damages

Turning to damages, Manson claims that the district court did not deduct personal consumption expenses from future earnings.  While the district court used imprecise language, it is clear that it relied upon the expert evidence which, in turn, subtracted the personal consumption amounts.  Though the experts disagreed on the exact inputs to calculate damages, each used the same basic components: LaFleur's lost earnings to the date of trial; his future earnings; a reduction of his future earnings for personal consumption and taxes; and a discount to calculate the present value of his future income.  Using

No. 18-31071

those components, Manson's expert calculated a range of economic loss between \$430,102.71 and \$627,116.16.[2]  Using those same components, but with different assumptions, the LaFleur Family's expert calculated a range between \$580,160.00 and \$826,525.00.  The district court awarded an amount within the latter range.  We conclude that this award was not error and affirm.

### D.    Prejudgment Interest

Manson notes that the district court awarded prejudgment interest on all damages.  Though those damages were reduced to present value, they combine previously accrued damages with future damages.  We have previously held that prejudgment interest may not be awarded for future damages in admiralty cases like this one.  *See Couch v. Cro-Marine Transp., Inc.*, 44 F.3d 319, 328 (5th Cir. 1995).  Our remedy has been that we vacate the interest award and remand for the district court to determine what proportion of the award is past damages versus future damages.  *Id.*  Consequently, we VACATE the district court's award of prejudgment interest and REMAND to reassess the interest.

AFFIRMED in part; VACATED and REMANDED in part.

---

[2] The range is based off of the combination of past and future earnings.